[No. B150778. Second Dist., Div. Seven. Sept. 24, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY M. DAVIS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, IV and V.

## COUNSEL

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and Stephanie A. Mitchell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, Acting P. J.**—A jury convicted defendant on three counts of failing to comply with the sex offender registration and notification requirements in Penal Code section 290, subdivisions (a)(1)(A) and (f)(1). The principal issue on appeal is whether a person commits a separate failure-to-register offense under Penal Code section 290, subdivision (a)(1)(A) each time he enters the same jurisdiction and fails to register within the specified period. We hold each failure to register constitutes a separate offense. Therefore we affirm defendant's two convictions for violating the statute's registration requirement. However, we reverse defendant's conviction for failure to inform the last registering agency of his change of address upon leaving the jurisdiction due to insufficiency of the evidence and instructional error. Finally, we find defendant is entitled to two additional days of presentence credit.

### FACTS AND PROCEEDINGS BELOW

Anthony M. Davis was convicted of rape in 1980. After his release from prison, he moved to Fairfield, California in 1983 and registered as a sex

offender under Penal Code section 290. In June 1997, Davis moved to Ventura County and registered with the Ventura County Sheriff.

On October 31, 1997, Davis and his wife rented an apartment in Canoga Park. The apartment manager saw Davis in the apartment four days later when she came to make some repairs. Davis's wife testified that after he helped her move into the apartment he went to Cleveland, Ohio and Germany, and she did not see him again until the following year.

Evidence showed Davis again lived in Fairfield from October 1998 to February 1999. There was also evidence Davis went to a Department of Motor Vehicles office in Los Angeles County in October 1998 to renew his driver's license. He gave the Canoga Park address as his residence. A month later, Davis was involved in an accident in Los Angeles while driving his wife's car. In completing the accident report to the police he gave the Canoga Park address as his residence.

Davis first came to the attention of the Los Angeles Police Department (LAPD) on August 8, 1999, when he was questioned as a possible rape suspect and released. A subsequent investigation, however, revealed Davis's prior rape conviction and the fact he had not registered with the LAPD as a sex offender. Police officers went to the Canoga Park address given them by Davis during the August 8 questioning. While the officers were standing outside the apartment building, Davis drove up in his wife's car. One of the officers asked Davis if he lived in the building and Davis admitted he did. He told the officer, "We have been here about two years."

The officers instructed Davis to go to the West Valley police station to register as a sex offender. When he did he was arrested.

At trial, Davis's wife testified Davis had not stayed at the Canoga Park apartment during August 1999. She was impeached with her testimony from the preliminary hearing where she testified Davis had stayed in Canoga Park from August 8th through 20th.

A jury convicted defendant of two violations of Penal Code section 290, subdivision (a)(1)(A),[1] which requires sex offenders to register their residence or location with the local law enforcement agency within five working days of entering the jurisdiction. The first violation was failure to register with the LAPD during the period October 20, 1998, to August 5, 1999. The second violation was failing to register with the LAPD during the period August 6, 1999, to August 30, 1999. The jury also convicted defendant of

---

[1]Further undesignated statutory references are to the Penal Code.

failing to report a change of address when he left Los Angeles in violation of section 290, subdivision (f)(1). The trial court sentenced defendant to an unstayed prison term of three years, four months.

DISCUSSION

I. *Davis's Two Convictions for Failing to Register Were Based on Two Separate Duties.*

Section 290, subdivision (a)(1)(A) states in relevant part: "Every person [convicted of specified sex offenses], for the rest of his or her life while residing in, or, if he or she has no residence, while located within California . . . shall be required to register with the chief of police of the city in which he or she is residing . . . within five working days of coming into [that city]." Any person who willfully violates any requirement of section 290 "is guilty of a continuing offense."[2]

The jury could have found from the evidence Davis was in the City of Los Angeles for at least five consecutive working days between October 20, 1998, and August 5, 1999, and failed to register with the LAPD, as alleged in count one of the information. The jury could also have found Davis left Los Angeles for at least five consecutive working days prior to August 6, 1999, and then returned to Los Angeles for at least five consecutive working days between August 6 and August 30 1999, and failed to register with the LAPD as alleged in count three of the information.

■ Davis does not dispute the sufficiency of the evidence to support these findings. Rather, he challenges the legal significance of his comings and goings. Because failing to register is a "continuing offense," Davis argues, he is guilty of only one violation of section 290, subdivision (a)(1)(A). This violation began when he failed to register after being in Los Angeles for five consecutive business days in November 1998 and ended when he was arrested in August 1999. Davis relies on the rule that "[i]n the case of continuing offenses, only one violation occurs even though the proscribed conduct may extend over a [*sic*] indefinite period."[3] Thus, where a defendant acts "in a constant fashion with but a single intent and objective in mind," i.e., the intent not to register as a sex offender, he commits only a single offense.[4]

Davis's argument misses the point. The question here is not whether a continuous offense can be parsed into multiple violations (it can't) but

---

[2]Section 290, subdivision (g)(8); *Wright v. Superior Court* (1997) 15 Cal.4th 521, 524 [63 Cal.Rptr.2d 322, 936 P.2d 101].

[3]*People v. Keehley* (1987) 193 Cal.App.3d 1381, 1385 [239 Cal.Rptr. 5].

[4]*People v. Gregori* (1983) 144 Cal.App.3d 353, 361 [192 Cal.Rptr. 555].

whether a separate offense is committed each time a person required to register as a sex offender enters the same jurisdiction and fails to register within the specified period. For the answer to this question we look to the definition of a "continuous offense" and the purpose of the sex offender registration requirement.

In *Wright v. Superior Court*, our Supreme Court held a continuous offense ordinarily " 'is marked by a continuing duty in the defendant to do an act which he fails to do.' "[5] The offense continues " 'as long as the duty persists and there is a failure to perform that duty.' . . ."[6]

Clearly the duty here is the duty to register with the local law enforcement agency. We can determine how long this duty persists by looking at the purpose of the registration requirement. This purpose is well established. It is " 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.' . . ."[7]

Given the purpose of section 290, to allow local law enforcement agencies to keep known sex offenders under surveillance, the duty to register arises when the sex offender enters a jurisdiction and ends when he leaves the jurisdiction. The duty to register in the original jurisdiction ends when the offender leaves that jurisdiction because the law enforcement agency in the original jurisdiction no longer has an interest in keeping the offender under surveillance when he is no longer located in its jurisdiction. If the offender returns to the original jurisdiction then a new duty arises because the local law enforcement agency has a renewed interest in keeping him under surveillance.

The following examples illustrate when a sex offender's registration duties begin and end. A sex offender who enters the City of Los Angeles in January and remains there for five consecutive working days must register with the LAPD no later than the fifth consecutive working day. If the offender drives to the City of Riverside in February, stays overnight, and returns to Los Angeles the following day he is still under his original duty to register in Los Angeles; no duty arose to register in Riverside. If, however, the sex offender drives to Riverside and remains there for five consecutive working days, he is under a duty to register with the Riverside police department no later than the fifth consecutive working day. His duty to register in Los Angeles also ends on that day because the LAPD no longer

---

[5] *Wright v. Superior Court, supra*, 15 Cal.4th at page 525.
[6] *Wright v. Superior Court, supra*, 15 Cal.4th at page 525, citation omitted.
[7] *Wright v. Superior Court, supra*, 15 Cal.4th at page 527, citations omitted.

has an interest in surveilling a sex offender residing outside its jurisdiction.[8] Should the offender move back to Los Angeles, a new registration duty arises because the LAPD would once again have an interest in keeping him under surveillance.

In the present case, Davis had a duty to register with the LAPD when he entered the city of Los Angeles and remained for five consecutive working days between October 20, 1998, and August 5, 1999. That duty ceased when he moved to Cleveland or Fairfield or Germany. A new duty arose when Davis returned to Los Angeles for five consecutive working days between August 6, 1999, and August 30, 1999. Davis did not register on either occasion. Therefore, he was guilty of two separate violations of section 290, subdivision (a)(1)(A).

II. *Any Error in Admitting Evidence of Davis's Sex Offense Convictions Was Harmless.** 

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *The Evidence Was Insufficient to Support Davis's Conviction Under Section 290, Subdivision (f)(1) for Failing to Inform the LAPD When He Left Los Angeles Between January 1 and August 30, 1999, and the Trial Court Committed Reversible Instructional Error on This Count.*

The jury found Davis guilty on count four of the information which alleged: "*On and between January 1, 1999 and August 30, 1999, in the County of Los Angeles*, the crime of failure to file a change of address, in violation of Penal Code section 290(f)(1), a felony, was committed by Anthony Michael Davis, who being a person required to file a change of address, residence and location, did willfully and unlawfully violate the provision of Penal Code section 290 requiring a person to inform *the last registering agency* in writing within 5 working days of a change of address and location." (Italics added.)

 Davis contends his conviction on count four must be reversed because the trial court failed to instruct the jury it must find he had actual

---

[8]The interest in keeping an offender under surveillance is different from the interest in being able to locate the offender in the course of an investigation. Every law enforcement agency in California, or at least those in proximate jurisdictions, is concerned with knowing where every sex offender is located because a prior offender could easily commit a new sex offense in a jurisdiction in which he is not registered. This concern is met by requiring local law enforcement agencies to submit registration data to the California Department of Justice where it is available to all other law enforcement agencies. It is unlikely, however, the LAPD has the inclination or resources to surveil sex offenders located in the City of Riverside.

*See footnote, *ante*, page 377.

knowledge of the requirement to inform the last agency with which he registered when he changed his address or left the jurisdiction.

■ Before addressing Davis's contention regarding lack of knowledge of the law, we address another ground for reversal proposed in the respondent's brief.

During the period in question, January 1 through August 30 1999, section 290, subdivision (f)(1) provided in relevant part: "If any person who is required to register pursuant to this section changes his or her residence address or location, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, the person shall inform, in writing within five working days, the law enforcement agency or agencies with which he or she last registered of the new address or location."

At trial and on appeal, the People renounced any claim Davis violated subdivision (f)(1) by not informing Ventura County officials he was moving to Los Angeles or moving from Los Angeles to another jurisdiction. Instead, the People maintained throughout the trial and on appeal Davis violated the statute by not informing the LAPD when he left to go to Cleveland or Fairfield or Germany.[11]

The evidence is undisputed Davis did not inform the LAPD he was leaving Los Angeles for another jurisdiction but under the plain language of the statute he was not required to do so. The statute requires the offender to report his move to a new jurisdiction to *the law enforcement agency or agencies with which he or she last registered.*[12] The uncontradicted evidence showed the agency with which Davis last registered before moving to Los Angeles was the Ventura County Sheriff, not the LAPD. Since Davis never registered with the LAPD when he entered Los Angeles he was not required to notify the LAPD when he left.

Even if the evidence showed Davis violated section 290, subdivision (f)(1) by failing to notify the Ventura County Sheriff of his move to Los

---

[11]The prosecutor told the jury in closing argument: "Count four goes to the time period of January 1, 1999 to August 30th, 1999 as to whether he left the jurisdiction and he left L.A. city, he left L.A. county, he left to go to some other part of the state or he left to go to another state or he left to go to Germany." The People repeated their position on count four in their respondent's brief: "Appellant appears to argue that his conviction for failure to file a change of address (count 4) was based on his failure to notify Ventura County officials that he left their jurisdiction and moved to Los Angeles County. But appellant's violation of section 290, subdivision (f), was alleged to have occurred between January 1, 1999 and August 30, 1999, long after appellant moved from Ventura County. As argued by the prosecution, count 4 was based on appellant's *failure to notify local officials when he left Los Angeles* to travel to another part of the state, a different state or Germany." (Italics added.)

[12]Section 290, subdivision (f)(1), italics added.

Angeles,[13] Davis could not be convicted of that offense in this trial. ■ "'It is fundamental that "[w]hen a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime. . . .""""[14] Davis was not charged with failing to notify the Ventura County Sheriff of his move to Los Angeles nor can such an offense be construed as necessarily included in the charge of failing to notify the LAPD when he left Los Angeles.

■ As an independent and sufficient ground for reversal, we agree with Davis's contention the trial court committed reversible error in failing to instruct the jury a willful failure to advise the last registering agency of a move outside the jurisdiction requires a finding the defendant had actual knowledge of this reporting requirement.

In *People v. Garcia*, our Supreme Court held "a violation of section 290 requires actual knowledge of the duty to register."[15] The People concede *Garcia* also requires actual knowledge of the duty to notify the last registering agency of a move out of the jurisdiction under section 290, subdivision (f)(1) and the trial court's instructions were defective in this respect.

The court in *Garcia* found the instructional error harmless beyond a reasonable doubt based on "strong evidence that defendant knew of the registration requirements."[16] No such evidence exists in this case with respect to Davis's knowledge of the duty to notify the last registering agency within five working days of a move outside the jurisdiction.

As previously noted, it is undisputed Davis's last registration was with the Ventura County Sheriff in 1997. The registration card Davis received at that time stated in relevant part: "I further understand that when registering pursuant to section 290 P.C., my requirement to register is for lifetime and that I must register within five working days of *moving into a city or a county* or a city/county, and that *I must annually update my registration,* name and vehicle information within five working days of my birth date." (Italics added.) Thus, the evidence showed Davis was advised of the duty to register when he moved *into* a city, but was not advised of the duty to report when he moved *out* of a city except to the extent of providing an annual update of his registration.

There being no other evidence regarding Davis's knowledge of the reporting requirements of section 290, subdivision (f)(1), the trial court's failure to instruct on actual knowledge prejudiced Davis.

---

[13]But see discussion, *post.*

[14]*People v. Thomas* (1987) 43 Cal.3d 818, 823 [239 Cal.Rptr. 307, 740 P.2d 419], citations omitted.

[15]*People v. Garcia* (2001) 25 Cal.4th 744, 752 [107 Cal.Rptr.2d 355, 23 P.3d 590].

[16]*People v. Garcia, supra,* 25 Cal.4th at page 755.

IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The conviction for violating Penal Code section 290, subdivision (f)(1), count 4, is reversed and the trial court is ordered to dismiss that count. The judgment is modified to reflect defendant is to receive total presentence credits of 404 days. In all other respects the judgment is affirmed.

Woods, J., and Perluss, J., concurred.

A petition for a rehearing was denied October 11, 2002, and appellant's petition for review by the Supreme Court was denied December 11, 2002.

*See footnote, *ante*, page 377.