65 Cal.Rptr.3d 12 (2007)
154 Cal.App.4th 712
The PEOPLE, Plaintiff and Respondent,
v.
Timothy FIELDER, Defendant and Appellant.
No. D050030.
Court of Appeal of California, Fourth District, Division One.
August 3, 2007.
*13 Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Asst. Atty. Gen., Gary W. Schons, Asst. Atty. Gen., Pamela Ratner Sobeck, Deputy Atty. Gen., for Plaintiff and Respondent.
Conrad Petermann, Ojai, CA, for Defendant and Appellant.
McCONNELL, P.J.
Timothy Fielder pleaded guilty to infliction of corporal injury on a cohabitant (Pen.Code,[1] § 273.5, subd. (a)) with personal infliction of great bodily injury (§ 12022.7, subd. (e)), making a criminal threat (§ 422), and three counts of failing to comply with the sex offender registration requirements (§ 290, subd. (g)(2)).[2] He admitted three prior prison terms (§ 667.5, subd. (b)), two serious felony prior convictions (§ 667, subd. (a)(1)), and two strikes (§ 667, subds. (b)-(i)). The court dismissed one of the strikes and sentenced him to 25 years in prison: six years (twice the middle term) for corporal injury to a spouse or roommate; four years for personal infliction of great bodily injury; 16 months (one-third the middle term, doubled) for each failure to register; a stayed term for making a criminal threat (§ 654); five years for each serious, felony prior; and one year for one prison prior.[3] Fielder appeals, contending he was improperly *14 punished for three violations of section 290 for a single course of conduct. We affirm.

BACKGROUND
Fielder was required to register as a sex offender pursuant to section 290. He registered with the San Diego Police Department (SDPD) in August 2005, giving his address as a hotel on Seventh Avenue in San Diego. He moved out of the hotel on September 9 or 10. On December 13, he committed the above offenses against the woman with whom he lived on 41st Street in San Diego.[4] Sometime between March 4 and 8, 2006, he was arrested for domestic battery in New Mexico. He never registered pursuant to section 290 with any address other than the Seventh Avenue hotel, nor did he notify the SDPD of his move to New Mexico. The three counts of failing to comply with the registration requirements were for the periods September 9 to 15, 2005; December 9 to 15, 2005; and December 20, 2005 to March 15, 2006.

DISCUSSION
Fielder contends he was improperly punished for three violations of section 290 for a single course of conduct.
Section 654 prohibits multiple punishment for the same act. Section 654, subdivision (a) states: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision...." Section 654 bars double punishment, including concurrent sentences, for a course of conduct constituting one indivisible transaction with one criminal objective. (Neal v. State of California (1960) 55 Cal.2d 11, 19, 9 Cal.Rptr. 607, 357 P.2d 839; People v. Latimer (1993) 5 Cal.4th 1203, 23 Cal.Rptr.2d 144, 858 P.2d 611; People v. Lee (1980) 110 Cal.App.3d 774, 785, 168 Cal.Rptr. 231.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (Neal v. State of California, supra, 55 Cal.2d at p. 19, 9 Cal.Rptr. 607, 357 P.2d 839.)
Here, Fielder was required to inform the SDPD within five days of moving out of the Seventh Avenue hotel on September 9 or 10, 2005. (§ 290, subd. (f)(1)(A).) This corresponds to the period September 9 to 15 in count three. Next, he was required to inform the SDPD within five days of moving into the 41st Street home where he committed the substantive offenses on December 13. (Ibid.) This corresponds to the period December 9 to 15 in count four. Finally, he was required to inform the SDPD within five days of moving to New Mexico where he was living between March 4 and 8, 2006. (Ibid.) This corresponds to the period December 20, 2005, to March 15, 2006 in count five. These were all separate acts, separately punishable.
Fielder relies on several cases that are of no aid to him. In People v. Britt (2004) 32 Cal.4th 944, 12 Cal.Rptr.3d 66, 87 P.3d 812, the reviewing court determined there was a section 654 violation where the defendant was punished for two counts arising from a single direct move. One count arose from his failure to inform the California county he left (§ 290, subd. (f)(1)), and the second count arose from his failure to register in the California county to which he moved (§ 290, subd. (a)(1)(A)). *15 (Britt, at pp. 949-954, 12 Cal.Rptr.3d 66, 87 P.3d 812.) The reviewing court noted that the defendant had a single objective: "to prevent any law enforcement authority from learning of his current residence." (Id. at p. 952, 12 Cal.Rptr.3d 66, 87 P.3d 812.)
In People v. Meeks (2004) 123 Cal. App.4th 695, 20 Cal.Rptr.3d 445, the defendant was convicted of failing to register between January 1 and May 15, 2000, within five days of his 1998 and subsequent changes of address (§ 290, subd. (a)(1)(A)), and of failing to register between December 1, 1999, and May 15, 2000, within five days of his December 3 birthday. (Meeks, at pp. 699-700, 705, 20 Cal.Rptr.3d 445.) The sentencing court imposed consecutive sentences. (Id. at p. 700, 20 Cal.Rptr.3d 445.) The reviewing court concluded that the defendant was properly sentenced on the two counts. It observed, "Once a triggering event occurs, the offense of failing to register is continuing in nature. Failure to register within five days of defendant's birthday occurred after December 8, 1998, and again after December 8, 1999, and every year thereafter. Although the periods for each of these offenses overlap somewhat and the objective of each is the same, it cannot reasonably be argued that defendant can be punished only once for each successive failure to register. Similarly, every time defendant moves, this triggers a new registration requirement, each of which continues indefinitely and overlaps with the one before it. However, each is a separate offense. [¶] `[T]he purpose of section 654 "is to insure that a defendant's punishment will be commensurate with his culpability." ' [Citation.] Under the circumstances of this case, failure to punish defendant for each failure to register would violate this purpose. A defendant who repeatedly moves without notifying authorities ... is surely more culpable than one who fails to register following only one triggering event." (Id. at pp. 705-706, 20 Cal.Rptr.3d 445.)
In Wright v. Superior Court (1997) 15 Cal.4th 521, 63 Cal.Rptr.2d 322, 936 P.2d 101, the defendant was charged with felony failure to register, although it was a misdemeanor when he changed his address and failed to register. (Id. at pp. 523-524, 63 Cal.Rptr.2d 322, 936 P.2d 101.) The reviewing court concluded that failure to register is a continuing offense, and the defendant still had not registered when it became a felony, so there was no ex post facto violation. (Id. at p. 524-533, 63 Cal. Rptr.2d 322, 936 P.2d 101.) The court did not address section 654.
In People v. Davis (2002) 102 Cal. App.4th 377, 125 Cal.Rptr.2d 519, the reviewing court concluded two separate violations of the registration law occurred. There, the defendant failed to register in Los Angeles while he lived there between October 20, 1998, and August 5, 1999. He moved out of Los Angeles for more than five working days. He returned to Los Angeles and failed to register during the period August 6 to August 30, 1999. (Id. at pp. 379, 381-383, 125 Cal.Rptr.2d 519.) The reviewing court noted that the purpose of the registration requirement is to assure that persons required to register are available for police surveillance, in view of the likelihood they will reoffend. (Id. at p. 382, 125 Cal.Rptr.2d 519.) It concluded that the defendant had a duty to register in Los Angeles between October 20, 1998, and August 5, 1999. (Id. at p. 383, 125 Cal.Rptr.2d 519.) That duty ceased five days after he moved out of Los Angeles, because the Los Angeles Police Department no longer had an interest in surveilling him. (Id. at pp. 382-383, 125 Cal.Rptr.2d 519.) A new duty arose when he returned for five days, because the police department once again had an interest in surveilling him. (Id. at p. 383, 125 Cal.Rptr.2d 519.)
*16 Here, the SDPD had an interest in surveilling Fielder from September 9 to 15 (the period in count three) and from December 9 to 15 (the period in count four). The SDPD's interest in surveilling him was hampered first because he did not inform the SDPD that he no longer lived at the Seventh Avenue hotel, and then because he did not inform the SDPD that he was living at the 41st Street home. There is no evidence that this was a single, direct move, as in People v. Britt, supra, 32 Cal.4th 944, 12 Cal.Rptr.3d 66, 87 P.3d 812. Punishing him for only one violation for both periods would give him an incentive to move multiple times without informing the SDPD, with the difficulty of surveilling him compounded with each move. While each move triggered a new registration requirement that continued and overlapped the requirement of the previous period, each failure to register was a separate offense. (People v. Meeks, supra, 123 Cal.App.4th at p. 705, 20 Cal. Rptr.3d 445.) Fielder's failure to inform the SDPD of his move to New Mexico between December 20, 2005, and March 15, 2006 (the period in count five), provided a new surveillance challenge, as he was no longer living anywhere in San Diego. Fielder's multiple moves without notifying the SDPD make him more culpable than a person who fails to register following only one move. (Id. at pp. 705-706, 20 Cal. Rptr.3d 445.) Each time he moved, he had another opportunity to comply with the law, and did not do so. There was no section 654 violation.

DISPOSITION
The judgment is affirmed.
WE CONCUR: McDONALD and AARON, JJ.
NOTES
[1] All further statutory references are to the Penal Code.
[2] Section 290, subdivision (g)(2) provides: "[A]ny person who is required to register under this section . . . who willfully violates any requirement of this section ... is guilty of a felony and shall be punished by imprisonment in the state prison for 16 months, or two or three years." Section 290 further states that registration with the relevant law enforcement agency is required "within five working days of coming into, or changing . . . residence within, any city, county, or city and county...." (§ 290, subd. (a)(1)(A).) Section 290 additionally states: "Any person who was last registered at a residence address pursuant to this section who changes his ... residence address, whether within the jurisdiction in which he ... is currently registered or to a new jurisdiction inside or outside the state, shall, in person, within five working days of the move, inform the law enforcement agency or agencies with which he ... last registered of the move, the new address or transient location, if known, and any plans he . . . has to return to California." (§ 290, subd. (f)(1)(A).)
[3] At the sentencing hearing, the court stated it "would be inclined ... to impose one prison prior for the case ending in 786 and to stay the other two prison priors, as indicated in the probation report." The sentencing minutes reflect a sentence on the "786" prison prior, but say nothing about the other two, and the abstract of judgment reflects a sentence on one prison prior, but says nothing about the other two.

The court did not have the authority to stay sentence on the two prison priors. It was required either to impose and execute one-year sentences or dismiss those enhancements. (People v. Langston (2004) 33 Cal.4th 1237, 1241, 17 Cal.Rptr.3d 596, 95 P.3d 865; People v. Campbell (1999) 76 Cal.App.4th 305, 311, 90 Cal.Rptr.2d 315.) The court's statement that it was inclined to stay sentence on the prison priors shows that had it been aware of its options, it would have dismissed the priors rather than imposing and executing sentence. Thus, the abstract of judgment correctly reflects no time for the two prison priors.
[4] They had been dating for about six months and living together for about three months.