Filed 5/2/16  P. v. Bosley CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT DEWAYNE BOSLEY,<br><br>    Defendant and Appellant. | F069448<br><br>(Super. Ct. Nos. F13909625 &<br>F13909564)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  James Petrucelli, Judge.

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Janet E. Neeley, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]       Before Levy, Acting P.J., Poochigian, J. and Peña, J.

Appellant Robert Dewayne Bosley appeals his convictions under Penal Code sections 290.11, subdivision (b), and 290.012, subdivision (c), for failing to register as a sexual offender. Section 290.11, subdivision (b) requires transient sexual offenders to update their registration within five working days of moving to a residence. Section 290.012, subdivision (c) requires transient sexual offenders to update their registration at least every 30 days if they remain transient. Appellant, convicted following a bench trial, alleges that insufficient evidence supports both convictions. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was convicted on June 15, 2000, of violating Penal Code section 289, subdivision (a).[1] As a result, he is subject to a lifetime requirement that he register as a sexual offender.

On November 28, 2012, appellant registered as a transient because he was about to become homeless. Appellant did not register again until January 16, 2013. At that time, appellant disclosed his residence as 4219 North Kavanaugh—his mother's address.

On January 15, 2013, Fresno Police Officer Alfred Lopez, Jr. was investigating appellant's registration status. Officer Lopez discovered that, by at least January 7, 2013, appellant was identified as out of compliance.

Upon further investigation, Officer Lopez found that appellant had been contacted by the police on December 30, 2012, and that information from that contact showed appellant's address as 4219 North Kavanaugh. Based on this information, Officer Lopez and three others went to the Kavanaugh address at 5:01 p.m. on January 15. Appellant was located at the address and arrested for violating his registration requirements.

After appellant's arrest, Officer Lopez interviewed appellant's mother, Brenda Cooley. The interview was recorded. In the course of that discussion, Ms. Cooley made

---

[1] All statutory references are to the Penal Code, unless otherwise noted.

2.

several statements regarding appellant's living situation. Ms. Cooley confirmed multiple times that appellant was living with her temporarily, until he could get his own place. When asked how long appellant had been staying at the Kavanaugh address, Ms. Cooley stated it had been a "couple of weeks." When told it was "obvious [appellant is] not homeless," Ms. Cooley responded: "Not now yeah." And when told that, although appellant had registered as transient, it was obvious that Ms. Cooley had taken her son in to help him, Ms. Cooley responded: "Yeah. You know he's going to school[;] can't leave him out here in this cold." In addition, Ms. Cooley confirmed that appellant had been sleeping either on the floor or on the couch, and that he had brought his own toothbrush, toothpaste, deodorant, and cologne to the house.

Appellant was ultimately charged with two counts relating to his failure to register. Count 1 alleged a violation of section 290.011, subdivision (b), failure by a transient to register a residence. Count 2 alleged a violation of section 290.012, subdivision (c), failure by a transient to update their registration. It was further alleged that appellant had suffered a prior serious felony. Appellant pled not guilty and a bench trial was held.

At the trial, Ms. Cooley was called as a witness for the People. Ms. Cooley testified that appellant was not staying with her in the early part of 2013 and that he had only stayed at her house one day prior to his arrest. Ms. Cooley denied previously telling the police that appellant had been staying with her and suggested the transcript of that conversation had been altered.

For the defense, appellant testified on his own behalf. Appellant confirmed that he registered as a transient on November 28, 2012. Appellant testified that he stayed at the Regional Medical Center, with a friend, in a car, or with the mother of his child while he was transient. The mother of appellant's child lived near the intersection of Marks and Ashlan Avenues, near the location where appellant was contacted by police on December 30.

Although appellant claimed he did not receive permission to move into his mother's house until January 16, he confirmed that he started sleeping there "sometime in January" because he "had to discuss living arrangements to get off the street." Yet, appellant testified that he did not live with his mother because "spending the night is not considered living," and because he was only staying at his mother's "on and off."

After hearing the testimony and closing arguments, the court found appellant guilty of both counts and found that appellant suffered a prior serious felony conviction. This appeal timely followed.

## DISCUSSION

Appellant argues that neither of his convictions are supported by sufficient evidence. Appellant's arguments are both dependent upon how one counts days under the relevant statutes. On count 1, appellant contends that evidence of the date he moved into the Kavanaugh address is too imprecise to support a finding of guilt beyond a reasonable doubt. Specifically, relying on the argument that working days means days the office was open for registration, appellant claims he could not be convicted of failing to register if he moved into his mother's house after January 2, 2013. According to appellant, no evidence supports a finding he moved prior to that date. On count 2, appellant contends that the evidence shows he was not a transient on January 10, 2013. Appellant's argument relied on a finding that he had more than 30 calendar days to register as a transient. In addition, appellant argues that he cannot be convicted of both counts 1 and 2 under the evidence adduced at trial.

### *Standard of Review and Applicable Law*

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient

4.

substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Our sole function "is to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," which is the same standard of review as in cases where the prosecution relies upon circumstantial evidence. (*People v. Williams* (2009) 171 Cal.App.4th 1667, 1673 (*Williams*).)

Both of the charges against appellant arise under the transient sexual offender registration requirements of section 290. Section 290 requires that certain sexual offenders shall be required to register with the police for the rest of their life while residing in California. (§ 290, subd. (b).) Section 290.011, entitled "Registration of transients," sets forth the primary obligations of a transient sexual offender. A transient is "a person who has no residence." (§ 290.011, subd. (g).) " 'Residence' means one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address, including, but not limited to, houses, apartment buildings, motels, hotels, homeless shelters, and recreational and other vehicles." (*Ibid.*)

A sexual offender living as a transient is required to register as a transient, and is required to provide current information on "where he or she sleeps, eats, works, frequents, and engages in leisure activities." (§ 290.01, subds. (a) & (d).) While living as a transient in California, every sexual offender who is required to register under section 290 is also required to update their registration at least every 30 days. (§ 290.012, subd. (c).) "A transient who moves to a residence shall have five working days within which to register that address, in accordance with subdivision (b) of Section 290." (§ 290.011, subd. (b).)

### Sufficient Evidence Supports Appellant's Conviction on Count 1

Under the requirements of section 290.011, subdivision (b), a transient sexual offender has a duty to update his registration within five working days of moving to a residence. (§ 290.011, subd. (b).) Appellant makes two intertwined arguments as to why

5.

his failure to register prior to his arrest on January 15, 2013, is not a violation of section 290.011, subdivision (b). First, appellant argues that under the plain language of the statute "five working days" means five days on which the relevant authorities are open to accept a registration change—i.e. "working day" means a day when the relevant authorities are working. Based on trial testimony showing that the Fresno Police Department's registration office is only open Tuesday through Thursday each week, appellant contends that his registration on January 16, 2013, would only be unlawful if he had moved into a residence on or before January 2, 2013.[2] Appellant then makes his second argument, that the evidence regarding when he moved to the Kavanaugh address is too imprecise to support a finding that he moved on or before January 2, 2013.

We disagree. For the reasons set forth below, we conclude that under section 290.011, subdivision (b), "working day" means "a day when work is normally done as distinguished from Saturdays, Sundays, and legal holidays." Accordingly, appellant was required to register if he moved into a residence on or before January 8, 2013.[3] Under this timeline, evidence that is reasonable, credible, and of solid value exists such that a reasonable trier of fact could find appellant guilty beyond a reasonable doubt on count 1.

*The Meaning of "Five Working Days"*

In order to resolve appellant's first argument, we must define the term "working day." " ' " ' Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.]' " ' [Citation.] ' "[W]e begin with the words of a statute and give these words their ordinary meaning." . . . If, however, the language supports more than one reasonable construction, we may consider "a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied,

---

[2]     January 2, 2013, was a Wednesday. Thus, under appellant's argument the five working days would be counted as January 3, 8, 9, 10, and 15.

[3]     Five working days from January 8, 2013, would include January 9, 10, 11, 14, and 15.

6.

the legislative history, public policy, contemporaneous administration construction, and the statutory scheme of which the statute is a part." [Citation.] Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*People v. Hagedorn* (2005) 127 Cal.App.4th 734, 741.)

The term working day is not specifically defined with respect to section 290. Historically, working day has been understood to mean "a day when work is normally done as distinguished from Sundays and legal holidays." (Webster's 3d New Internat. Dict. (1986) p. 2635.) This definition hews closely to the historical roots of the term in legal parlance. As far back as 1882, the term working days was considered to have "in commerce and jurisprudence a settled and definite meaning" of "days as they succeed each other, exclusive of Sundays and holidays." (*Pedersen v. Eugster* (E.D.La. 1882) 14 F. 422 [citing to *Brooks v. Minturn* (1851) 1 Cal. 481, 483].) This settled meaning derived from maritime and construction law, as has been noted by leading law dictionaries of the past. (See 2 Bouvier's Law Dictionary (3ed. 1914) p. 3487, col. 2 ["In Maritime Law. Working days include all days except Sundays and legal holidays and do not include days on which, by the custom of the port, baymen stop work on the day of the funeral of one of their deceased members . . . [¶] Running or calendar days on which the law permits work to be done. The term excludes Sundays and legal holidays, but not stormy days."]; Black's Law Dict. (Rev. 4th ed. 1968) p. 1780, col. 2 ["Construction Contracts [¶] The term 'working days may exclude not only Sundays and holidays, but also days upon which no work can be done because of weather conditions. [¶] . . . Maritime Law [¶] Running or calendar days on which law permits work to be done, excluding Sundays and legal holidays."].)

However, the meaning of working day has also been expressed in a slightly less precise manner. The current version of section 290.011 was introduced in 2007 and non-

substantively amended in 2009 and 2010. (See § 290.011.) In some dictionaries from that time frame, working day is defined (through the term workday) as "[a] day on which work is usually done." (American Heritage Dict. (4th ed. 2000) p. 937, col. 2.) And working day has been removed from Black's; replaced by more common terms such as business day—which focuses on days when business is typically conducted. (Black's Law Dict. (10th ed. 2014) p. 480, ["business day (1826) A day that most institutions are open for business, usu. a day on which banks and major stock exchanges are open, excluding Saturdays, Sundays, and certain major holidays."].)

Similarly, while no court appears to have defined the term working days in prior section 290 cases, we have previously proceeded according to an analysis which presumed that working days are the days on which work is normally done. For example, in *Williams, supra,* 171 Cal.App.4th at page 1669 we considered a situation where Mr. Williams was released from prison on May 24, 2006, and immediately traveled to Madera. Although informed that he must register under section 290 within five working days of coming to Madera, Mr. Williams failed to register. (*Id.* at p. 1670.) He was arrested on Saturday, June 3, 2006, 10 days after arriving in Madera. (*Ibid.*) While the dispute focused on when Mr. Williams began residing in Madera, we noted that he had "passed six full working days" in Madera and specifically identified those days as "Thursday and Friday, the 25th and 26th of May, as well as Tuesday through Friday, May 30 through June 2, 2006. Monday, May 29, had been the Memorial Day holiday." (*Id.* at p. 1670.) Based on our resolution of the residence issue and this accounting of time, we concluded that Mr. Williams "was required and failed to register within the five working days allotted him." (*Id.* at p. 1673.)

Thus, while there are some historical differences in the common understanding of working day, the term has consistently been used to denote the days on which business is normally done, regardless of whether business is actually done. Appellant argues for a construction which includes only the specific working days of the entity responsible for

acting—in this case the Fresno Police Department's registration office. Appellant concedes, however, that he has found no case supporting this proposed reading of the statute, and provides no grammatical support for his position.

We, therefore, conclude that the statute does not support more than one reasonable construction relevant to this case and confirm, consistent with the general understanding of the term and the implicit analysis of our past cases, that working day means a day when work is normally done as distinguished from Saturdays, Sundays, and legal holidays.

While appellant contends that the Legislature could have used the phrase "Monday through Friday, excluding holidays" if it had meant something similar to the interpretation we adopt, this argument presupposes that the words the Legislature chose do not mean just that. As shown above, "Monday through Friday, excluding holidays" is, functionally, the meaning of their word choice. Regardless, even if we had found the language ambiguous, substantial extrinsic evidence supports our reading.

The purpose and intent of the statutory registration scheme, including the public policy behind it, and the objects to be achieved and the evils to be remedied through it, has been regularly discussed in the case law. "Sex offenders have been identified by the Legislature as posing a continuing threat to society. [Citation.] Section 290 is therefore aimed at controlling crime and preventing recidivism in sex offenders. [Citation.] ' "The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future." ' " (*People v. Horn* (1998) 68 Cal.App.4th 408, 417 (*Horn*).)

Under our reading of working days, sexual offenders subject to registration requirements are not likely to have longer than nine calendar days in which to initially register their address or update their registration if they move. This limited time ensures that these individuals, deemed high-risk for recidivism, will quickly be available for

police surveillance. Under appellant's reading, this timeframe could be greatly extended. Under the facts of this case, appellant argued he should have had a minimum of 13 days in which to register and further suggests that in situations where registration offices are open one day a week registrants should be given 30 days or more to register. Such a result would completely undercut the stated goals of the registration requirement.

Outside of the sexual offender registration statutory scheme, the term working days is regularly utilized by the Legislature. In these contexts, too, our construction is supported. In the limited instances where statutory definitions exist, they do not support appellant's proposal. (See Bus. & Prof. Code, §§ 7598.4, subd. (b), 7599.39 [" 'Within three working days' means 72 hours from the time an employee is first compensated for alarm agent services for a licensee."].) And in the regulatory sphere, virtually all definitions support our construction. (See, e.g., Cal. Code Regs., tit. 8, § 330, subd. (b) [" 'Working days' means Mondays through Fridays but shall not include Saturday, Sunday or State Holidays."]; Cal. Code Regs., tit. 8, § 347, subd. (z) [" 'Working Days' means any day that is not a Saturday, Sunday or State-recognized holiday as provided in Government Code Sections 6700 and 6701."]; Cal. Code of Regs., tit. 14, § 790, subd. (w)(3) [" 'Working Days' means those days of the week that are not state or federal holidays, weekends or days that State of California offices are ordered to be closed by the Governor."]; Cal. Code Regs., tit. 14, § 2000, subd. (48) [" 'Working days' means all days except Saturdays, Sundays, and official California State Holidays."]; Cal. Code Regs., tit., 28 § 1300.71, subd. (a)(13) [" 'Working days' means Monday through Friday, excluding recognized federal holidays."].) Our construction is thus consistent with both the ordinary meaning of the term and extrinsic evidence relating to both the statutory scheme and the common regulatory meaning of the language when used by the Legislature.

We reject appellant's argument in reply that the statute must be read as he proposes, in part based on allegations that the Fresno Police Department and the trial judge applied appellant's construction for working days.

With respect to appellant's allegations that the Fresno Police Department understood working days to mean only the days the registration office was open, appellant provides no law suggesting that the understanding of a witness will trump the clear language of the statute. And we see no indication in the record that the trial judge lacked a proper understanding of the law. At most, in response to an objection to questions about the meaning of working days to the Fresno Police Department, the trial court stated: "I want to hear where this is going. A workday is a workday. He already explained that the officer was available Tuesday through Thursday." We find no reason to overturn the general presumption that the trial court knew and applied the correct law based on this ambiguous response to an objection. (*People v. Tessman* (2014) 223 Cal.App.4th 1293, 1302 ["As a broad general proposition, cases have stated that a trial court's remarks in a bench trial cannot be used to show that the trial court misapplied the law or erred in its reasoning."]; *People v. Sangani* (1994) 22 Cal.App.4th 1120, 1138 ["We must presume that the trial court knew and applied the correct law in the exercise of its official duties."].)

Finally, while it is true that an ambiguous statute must be interpreted under the rule of lenity, "[t]his principle . . . does not require that the statute be given its narrowest meaning, nor does it require that the statute be strained and distorted in order to exclude conduct clearly within its scope. [Citation.] It merely means that the statute will be construed as favorably to the defendant as its language and intent will reasonably permit." (*Horn*, *supra*, 68 Cal.App.4th at p. 419.) Our construction holds true to this principle.

*Analysis Under the Proper Definition of Working Days*

Under our construction of working days, appellant was required to register on or before January 15, 2013, if he obtained a residence by January 8, 2013. We find sufficient evidence supports appellant's conviction for failing to register. At the time of appellant's arrest, Ms. Cooley repeatedly admitted that appellant was residing at the Kavanaugh address and told officers that appellant had been there for a couple of weeks. And, while appellant believed he did not have permission to move in with his mother until January 16, he admitted at trial that he started sleeping at the Kavanaugh address in January 2013.

Relying on *People v. Mejia*, (2007) 155 Cal.App.4th 86 (*Mejia*), appellant argues that Ms. Cooley's "couple of weeks" timeframe is not precise enough to confirm beyond a reasonable doubt the date that appellant violated the five working day registration requirement. We disagree and note that *Mejia* is distinguishable. In *Mejia*, the prosecution was required to show that the defendant engaged in three or more acts of sexual abuse over a period of at least three months, a 90-day period ending September 17, 2004. (*Mejia*, *supra*, 155 Cal.App.4th at pp. 94-95.) However, the testimony introduced at trial provided no guidance as to when the abuse started. While multiple instances of abuse were disclosed, the abuse was not regular enough to confirm that one instance occurred in each week of the relevant time period. (*Id.* at pp. 94-95.) For this reason, the jury was left to "speculate that the first incident occurred early enough in June to satisfy the 90-day requirement expiring on September 17, 2004." (*Id.* at p. 95.)

In contrast, here the totality of the evidence is sufficient to conclude, without speculation, that appellant was residing at the Kavanaugh address prior to January 8, 2013. The jury heard statements from Ms. Cooley that appellant had been staying at the Kavanaugh address for a couple of weeks and from appellant that he began staying there sometime in January. As appellant's arrest was only one week after January 8, it requires

no speculation to infer that appellant had moved into the Kavanaugh address between January 1 and January 7, and the trial court was free to make that factual inference.

Although the supporting testimony is general in nature, it does not run afoul of the principles set forth in *Mejia*. Indeed, the *Mejia* court acknowledged that "the prosecution need not prove the exact dates of the predicate sexual offenses in order to satisfy the three-month element. Rather it must adduce sufficient evidence to support a reasonable inference that at least three months elapsed between the first and last sexual acts. Generic testimony is certainly capable of satisfying that requirement . . . ." (*Mejia*, *supra*, 155 Cal.App.4th at p. 97.) In this case, the generic testimony was sufficiently reasonable, credible, and of solid value to conclude beyond a reasonable doubt that appellant had moved into a residence prior to January 8, 2013.[4]

## *Sufficient Evidence Supports Appellant's Conviction on Count 2*

Under the requirements of section 290.012, subdivision (c), a transient sexual offender has a duty to update his registration "at least every 30 days, in accordance with Section 290.011." (§ 290.012, subd. (c).) Appellant contends that he had until January 10, 2013, to update his registration. On the assumption that appellant moved into the Kavanaugh address between December 30, 2012, and January 5, 2013, appellant concludes that the evidence is insufficient to show he had a duty to update his registration on January 10 because he was no longer transient as of that date.

The People agree that appellant's conviction under count 2 cannot stand, but for different reasons. Despite arguing on count 1 that working days means Mondays through Fridays, excluding weekends, the People argue that to convict appellant on count 1, the trial court necessarily found that appellant "moved into his mother's house on or before

---

**4**      The statute's broad definition of residence as "one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there," (§ 290.011, subd. (g)) further supports the reasonable conclusion that appellant had an obligation to register his residence at the Kavanaugh address prior to January 8, 2013.

13.

January 2."  In doing so, the People wrongly adopt the working day construction proposed by appellant and opposed by the People with respect to count 1 by contending that five working days from January 3 "would have been January 16."  The People's position is inconsistent with the statute and the People's prior positions and we, therefore, reject it.  (*People v. Sanders* (2012) 55 Cal.4th 731, 740 ["We decline to accept this concession because it is not supported by the statutory language."].)

Appellant first registered as a transient on November 28, 2012.  Under the provisions of Penal Code section 290.012, subdivision (c), appellant is required to update his registration "at least every 30 days, in accordance with Section 290.011" if he remains a transient.  Under section 290.011, subdivision (a), appellant is required to "reregister no less than once every 30 days" and, if he fails "to reregister within any 30-day period," appellant is subject to prosecution.  Appellant did not register again until January 16, 2013.

In contrast to our discussion under section 290.011, subdivision (b), the relevant timing requirements of subdivision (a) and section 290.012 do not refer to "working days."  Instead, they refer simply to days.  Thus, as both appellant and the People recognize, appellant's 30-day period expired on December 28, 2012, exactly 30 days from when he first registered as transient.  While appellant contends he was entitled to a five working day grace period, there is no support for this position within the relevant statutes.  While testimony was elicited at trial showing the Fresno Police Department's computers provide a period of time before identifying a registrant as out of compliance, Officer Lopez explained that this was not a grace period but instead a confirmation that the registrant was more than five days out from the registration requirement.  Appellant identifies no reason why, even if a grace period is provided by the police, such conduct should control over the plain meaning of the statute.  Accordingly, if the evidence can

reasonably support a conclusion that appellant was transient as of December 29, 2013, appellant was obligated to register as a transient on or before December 28, 2013.**5**

As discussed above, the evidence can reasonably support the conclusion that appellant did not move to the Kavanaugh address until sometime between January 1 and January 7, 2013. Prior to that time, appellant was registered as a transient and testified he was sleeping in various locations. Through various arguments the People suggest that the evidence corroborates a move in date for the Kavanaugh address between Christmas 2012 and January 2, 2013, based on appellant being contacted by the police at a nearby store on December 30, 2012. However, contradictory evidence, which the trial court was free to credit, shows that the December 30 contact could have been the result of appellant staying with the mother of his child.

It is the province of the finder of fact to weigh the evidence. " ' "We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." ' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 41.) Reviewing the record, we conclude that the fact finder could rely on evidence that was reasonable, credible, and of solid value to conclude beyond a reasonable doubt that appellant had an obligation to register as a transient on or before December 28, 2012, and failed to do so.

### Appellant can be Convicted of Both Counts

Appellant's final argument is that he could not be convicted of both failing to register a residence and failing to register as a transient. However, appellant's argument is predicated on the already rejected premise that he had until January 10, 2013 to register as a transient. Appellant recognizes that conviction on both counts would be appropriate if appellant was in violation of two separate duties to register. (See *People v. Davis*

---

**5**     Appellant does not contest that he could have registered at some point within the 30-day period and has not argued that impossibility on the last day of the registration period justifies a failure to comply. Thus, we have no reason to consider the effect of the end of the 30-day period falling on a Friday, when the registration office was closed.

15.

(2002) 102 Cal.App.4th 377, 381-383 [finding a registrant can be convicted for failing to register each time a separate duty to register arises]; *People v. Meeks* (2004) 123 Cal.App.4th 695, 702-703; *People v. Villegas* (2012) 205 Cal.App.4th 642, 648.) Such is the case here.

Appellant's duty to register as a transient was violated when appellant failed to reregister on December 28, 2012. After that duty was violated, appellant moved to the Kavanaugh address. He then had a duty to register that move within five working days and failed to do so. As the first violation was complete before the duty to register supporting the second violation arose, appellant can be properly convicted of both violations.

## DISPOSITION

The judgment is affirmed.

16.