[No. B193804. Second Dist., Div. Five. Sept. 12, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
MAURICIO ALFONSO MEJIA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts B.–H. of the Discussion.

## COUNSEL

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KRIEGLER, J.**—Defendant and appellant Mauricio Alfonso Mejia was charged with committing nine counts of sexual abuse against his granddaughter, the victim in this appeal, when she was 13 to 14 years old. The jury found him guilty of eight of those charges: continuous sexual abuse of a child under 14 years of age in violation of Penal Code section 288.5, subdivision (a);[1] six counts of committing a lewd act on a child of 14 or 15 years of age in violation of section 288, subdivision (c); and forcible rape in violation of section 261, subdivision (a)(2). Defendant was sentenced to state prison for 24 years, consisting of the midterm of 12 years for the continuous sexual abuse as base term, with six consecutive sentences of eight months (one-third of the two-year midterm sentences) on the lewd act convictions, plus a full consecutive upper term sentence of eight years on the rape conviction.

In his timely appeal, defendant contends (1) there was constitutionally insufficient evidence to support his convictions for continuous sexual abuse, two of the lewd act convictions (counts 2 & 4 concerning acts in Sept. and Oct. 2004) and the rape conviction; (2) as to the continuous sexual abuse offense, the trial court erred in giving the pattern jury instruction indicating the prosecution need not prove the offense occurred on exactly the date alleged; (3) the trial court erroneously failed to instruct on attempted rape as a lesser included offense of rape; (4) the trial court erroneously failed to instruct on lewd conduct as a lesser included offense of continuous sexual abuse; (5) the trial court abused its discretion in admitting evidence of uncharged sexual offenses by defendant against the victim's mother, which violated defendant's federal constitutional right to due process; (6) the

---

[1] All statutory references shall be to the Penal Code, unless stated otherwise.

prosecutor committed misconduct during her rebuttal argument by urging the jury to consider punishment; (7) the trial court improperly imposed a full consecutive upper term sentence for the rape conviction based on its erroneous understanding that such a term was mandatory under section 667.6, as that provision provided at the time defendant committed the relevant offenses; and (8) the imposition of an upper term sentence for the rape conviction violated defendant's Sixth Amendment right to a jury trial under *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*).

As we explain, defendant's challenges to the sufficiency of evidence supporting his continuous sexual abuse conviction (count 1), as well as his lewd act conviction for conduct in September 2004 (count 2), are well taken because there was no substantial evidence that the assaults occurred within the statutory time periods. There was, however, constitutionally sufficient evidence supporting his conviction for the October 2004 lewd act and the rape. Based on our reversal of count 1, we need not reach the two separate claims of instructional error concerning that offense. We find any error in failing to instruct on attempted rape as a lesser offense to be harmless beyond a reasonable doubt. There was no error or due process violation regarding the admission of uncharged sexual offenses. The claim of prosecutorial misconduct based on a comment during rebuttal argument was forfeited. Concerning the application of section 667.6 at sentencing, we accept the Attorney General's concession that remand is necessary to permit the trial court to resentence on the rape conviction under the law as it existed at the time of the offense. Finally, remand is also required on the *Blakely* issue because the trial court relied on aggravating factors that were not found by a jury to impose the upper term on the rape conviction.

## STATEMENT OF FACTS

### A. *Prosecution Evidence*

The victim was born on September 18, 1990, and was 15 years old at the time she testified. Defendant is her grandfather. The victim lived with her parents and brothers in Huntington Park. Defendant began sexually molesting the victim in 2004. The incidents occurred in her own home and in defendant's home in Los Angeles on weekday afternoons when defendant watched her after school. The first incident occurred at home, when the victim was in eighth grade. She was in her bedroom reading her yearbook. Defendant entered the room and asked about the yearbook. The victim said that she was looking at it because she was getting ready to graduate from middle school. When she mentioned that her knee was hurting, defendant

began massaging her raised knee—but "went lower and started touching [her] vagina" with his hand over her clothes. Before leaving, he told her "not to say anything."

The second instance of sexual abuse occurred one or two days later, at defendant's house. The victim was in the living room, watching television and petting the dog. Defendant began petting it too, but proceeded to rub the victim's vagina over her clothes. Defendant stopped when the victim's father arrived to pick her up. From that time until January of 2005, defendant would sexually molest her in a similar fashion "two or three days a week." The abusive incidents occurred "from June 2004 to January 2005." When defendant tried to reach his hand "inside" her pants, however, the victim would try to push him away. She did not tell anyone about defendant's conduct because she felt ashamed and because he had warned her not to—he told her that "it really wouldn't matter" if she reported it "[b]ecause nobody would believe [her]."

On an afternoon in January 2005, the victim was on her bed listening to music. She was wearing her school uniform, consisting of a white shirt and blue pants. Defendant opened her bedroom door, entered the room, closed the door behind him, and said hello. Suddenly, defendant climbed on top of the victim, pulled down her pants and underwear, and unzipped his pants. He put his knees between her legs and his penis in her vagina. She could not push him off. When he left the room, she felt dirty and took a shower. She did not tell her parents what defendant had done.

On cross-examination, the victim stated that defendant molested her approximately 10 times in 2004, while she was in eighth grade. She began ninth grade "around July" that year. That is, "between June and July" defendant molested her 10 times. The victim testified on redirect examination that during the 12-week period from June through August defendant molested her more than three times. In September 2004, defendant molested her more than two times; he did the same in October. On recross-examination, the victim denied testifying that defendant did not molest her at all in October of 2004. Rather, he did so "about once." When defense counsel asked her to state the number of times defendant had molested her in October, the victim stated: "I don't really remember much of October."

Regarding the January 2005 rape incident, the victim testified that her legs had been together, but defendant "pulled them open" and "pushed [her] knees back," before penetrating her. The penetration was painful.

On October 4, 2005, the victim spoke to her friend Elisa at school. When Elisa confided that she had been molested when she was little, the victim told her that she "had a similar situation." After school, the victim went to Elisa's home and told her friend that defendant and her uncle had molested her. The victim explained that she was "tired of her life" and could not "take it any more" because defendant and her uncle sexually molested her—they had "sexual relationships with her." The victim did not want to return to her own house because defendant molested her there. Elisa advised the victim to speak up and tell people about the abuse because it would not stop until she did. The victim agreed and told Elisa's mother. Elisa's mother telephoned the victim's mother and told her what the victim had said. When the victim's mother arrived, the victim told her about the abuse. The victim's mother took her home and reported the matter to the police.

The victim's mother testified that defendant, her father, had molested her when she was six or seven years old. Whenever her mother was out of town, defendant would enter her bedroom and touch her vagina while she was in bed. He persisted despite her telling him "no." At the time, defendant told her to keep his behavior a secret or "he would kill [her] grandmother or hurt [her] mom." Defendant also molested her in the swimming pool while pretending to give swimming lessons and after giving her a bath. On occasion, he would penetrate her with his penis. The molestations continued until she was 12 or 13 years old. They ended when she grabbed a pair of scissors and threatened to "chop his balls off" if he touched her again. She let him watch the victim because she thought he had "changed" and become "a different person."

### B. *Defense Evidence*

The defense sought to challenge the victim's credibility about the sexual abuse. Defendant's 20-year-old daughter, Martha, testified that she lived in defendant's house during her teenage years. Defendant did not sexually molest her. She had a close relationship with the victim, who would typically confide her secrets to Martha. At the time of defendant's arrest, the victim told her that defendant did not "take her virginity" and "never penetrated" her. Martha was not aware her father engaged in any inappropriate conduct toward the victim.

## DISCUSSION

### A. *Sufficiency of the Evidence Claims*

Defendant contends there was constitutionally insufficient evidence to support his convictions for continuous sexual abuse (count 1), two of the lewd act convictions (counts 2 & 4), and the rape conviction (count 9). As to

the continuous sexual abuse conviction, defendant argues there was no solid, credible evidence that three acts of molestation occurred over the three-month duration period required by section 288.5, subdivision (a). As to the lewd act conviction for conduct in September 2004 (count 2), defendant argues there was no solid, credible evidence the molestation occurred after the victim's 14th birthday, as alleged. As we explain, these two claims have merit. We reject, however, defendant's sufficiency of the evidence challenges to the lewd act conviction for conduct in October 2004 and to the rape conviction.

" 'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] We apply an identical standard under the California Constitution. [Citation.] 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citation.] The same standard also applies in cases in which the prosecution relies primarily on circumstantial evidence. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1175 [24 Cal.Rptr.3d 112, 105 P.3d 487].)

We therefore review the record in the light most favorable to the prosecution to determine whether the challenged convictions are supported by substantial evidence, meaning "evidence which is reasonable, credible, and of solid value." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) In contrast, "mere speculation cannot support a conviction. [Citations.]" (*People v. Marshall* (1997) 15 Cal.4th 1, 35 [61 Cal.Rptr.2d 84, 931 P.2d 262].) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young, supra,* 34 Cal.4th at p. 1181.)

Defendant was charged and convicted of continuous sexual abuse of the victim "on or between June 1, 2004 and September 17, 2004." Section 288.5, subdivision (a) provides: "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a

period of time, *not less than three months in duration*, engages in three or more acts of substantial sexual conduct *with a child under the age of 14 years at the time of the commission of the offense*, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child . . . ." (Italics added.) Therefore, under the statute's plain terms, in addition to the requirement that the victim be less than 14 years old at the time of the offense, the prosecution must prove defendant committed the minimum number of proscribed acts within the specified time period. "Section 288.5 relates to 'continuous sexual abuse' and accordingly requires at least three acts of sexual misconduct with the child victim over at least three months to qualify for prosecution of persons who are either residing with, or have 'recurring access' to, the child." (*People v. Rodriguez* (2002) 28 Cal.4th 543, 550 [122 Cal.Rptr.2d 348, 49 P.3d 1085]; see *People v. Vasquez* (1996) 51 Cal.App.4th 1277, 1287 [59 Cal.Rptr.2d 389, 59 Cal.Rptr. 389] ["the language of section 288.5 indicates the statute is violated if the defendant (1) resided with, or had recurring access to, a child under fourteen, and (2) committed three or more acts of sexual molestation of the child, and (3) three or more months passed between the first and the last act of molestation"]; *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1298 [45 Cal.Rptr.2d 571] ["In the case of a defendant charged with violating section 288.5, the requirement of proof beyond a reasonable doubt [citation] means that each juror must find, beyond a reasonable doubt, that the defendant engaged in at least three acts of sexual abuse with the child victim within the prescribed time frame."].)[2]

Our task, therefore, is to determine whether the evidence below supported a reasonable inference that at least three months elapsed between the first and third time defendant sexually abused the victim before her 14th birthday on September 18, 2004. Presuming in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence, we find no reasonable, credible, solid evidence to support a nonspeculative inference that the three-month minimum time period element was satisfied. Construing the victim's testimony in the light most favorable to the People's case, the evidence showed defendant first abused her sometime in June 2004, when she was in eighth grade. There were 10 instances of abuse by defendant

---

[2] Consistent with the requirements of section 288.5, subdivision (b), the trial court gave Judicial Council of California Criminal Jury Instructions (2006) CALCRIM No. 1120, which included as an element that the jury must find "[t]hree or more months passed between the first and last acts."

between June and the start of ninth grade sometime "around July" of that year. The victim also testified that during the 12-week period from June through August 2004, defendant molested her more than three times. In September of that year, defendant molested her at least twice. While on direct examination, the victim testified generally that defendant molested her "two or three days a week," but she clarified that defendant did not molest her every week within that time period.

Accordingly, the only reasonable inference permitted by the evidence was that defendant's abuse began sometime in June and continued to some date in September—but the jury could only speculate that the first incident occurred early enough in June to satisfy the 90-day requirement expiring on September 17, 2004. Indeed, there was no evidence as to when defendant abused her in September, including whether the abuse occurred before and/or after her birthday. As defendant correctly argues, although there was ample evidence that at least three qualifying sexual offenses occurred during the charging period, there was no substantial evidence that at least three months elapsed between the first and third offenses committed against her as a 13 year old.

The Attorney General argues section 288.5, subdivision (a) does not include a strict three-month minimum time period as an element of the offense, but that the statute should be read as merely requiring proof that an act of sexual abuse occurred in three successive months. Alternatively, the Attorney General argues we should construe the statute's three-month requirement as a mere "charging limitation," designed to prevent the prosecution from seeking multiple convictions for separate sexual offenses occurring within the period alleged for the section 288.5, subdivision (a) offense, but permitting a conviction for such continuous sexual abuse based on a minimum of three acts of sexual abuse occurring *any time* within the time period alleged. As we explain, neither interpretation comports with the statute's plain meaning, as read in light of the legislative intent.

"In construing a statute, we look first to the statutory language." (*People v. Vasquez, supra*, 51 Cal.App.4th at p. 1284, citing *People v. Boyd* (1979) 24 Cal.3d 285, 294 [155 Cal.Rptr. 367, 594 P.2d 484].) "The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.] The intent of the law prevails over the letter of the law, and ' "the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.]' [Citation.]" (*People v. Canty* (2004) 32 Cal.4th 1266, 1276–1277 [14 Cal.Rptr.3d 1, 90 P.3d 1168].)

As our colleagues in Division Three have explained: "The words and syntax of the statute set forth the following elements: the defendant (1) must have (a) resided with, *or* (b) had recurring access to, a minor less than fourteen years of age, *and* (2) must have engaged in three or more acts of substantial sexual conduct or lewd and lascivious conduct with the minor over a period of time not less than three months in duration. The requirement of a three-month period of time is grammatically attached to the requirement of three or more acts, not to the requirement of a shared residence or recurring access." (*People v. Vasquez, supra,* 51 Cal.App.4th at p. 1284 [holding § 288.5, subd. (a) does not include as a necessary element three *continuous* months of access to the child victim].) Had the Legislature intended to define the relevant time period as a minimum of three acts occurring in three successive months, it would have made little sense, logically or grammatically, to employ the phrase "over a period of time, not less than three months in *duration.*" (§ 288.5, subd. (a), italics added.)

■ Indeed, such an interpretation would deprive the word "duration" of its significance in relation to the legislative purpose. As our Supreme Court has pointed out: "The Legislature's accompanying statement of purpose declared that 'there is an immediate need for additional statutory protection for the most vulnerable among our children, those of tender years, some of whom are being subjected to continuing sexual abuse by those commonly referred to as "resident child molesters." These molesters reside with, *or have recurring access to*, a child and repeatedly molest the child over a prolonged period of time but the child, because of age or the frequency of the molestations, or both, often is unable to distinguish one incident from another . . . , and as a consequence prosecutors are unable to . . . overcome . . . constitutional due process problems . . . .' [Citation.]" (*People v. Rodriguez, supra,* 28 Cal.4th at p. 546.) It has been recognized that "[t]he text of section 288.5 leaves no doubt the Legislature intended to create a course-of-conduct offense" (*People v. Whitham, supra,* 38 Cal.App.4th at p. 1296), with the course of conduct statutorily defined as "at least three acts of sexual abuse with the child victim within the prescribed time frame." (*Id.* at p. 1298.) An interpretation that ascribed the three-month time period to a mere "charging limitation" would be entirely inconsistent with the statute's overarching legislative aim, as it would permit a conviction for recurring conduct over a "prolonged period," based on three acts occurring in as short a period as a single day—as long as the acts happened sometime "within" the time period alleged. Thus, in keeping with the legislative aim of punishing a course of conduct over a *prolonged period*, it follows that the Legislature's use of the phrase "over a period of time, not less than three months in duration" in direct relation to the "three or more acts of substantial sexual conduct" was meant to set the minimum temporal scope of the proscribed course of conduct.

Contrary to the Attorney General's assertion, precedent recognizing that generic testimony of abuse can suffice to support a section 288.5 conviction, does not require a more liberal reading of the statute's three-month limitation. " '[E]ven generic testimony (e.g., an act of intercourse "once a month for three years") outlines a series of *specific*, albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction.' " (*People v. Matute* (2002) 103 Cal.App.4th 1437, 1445 [127 Cal.Rptr.2d 472], quoting *People v. Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].) As we have explained, the prosecution need not prove the exact dates of the predicate sexual offenses in order to satisfy the three-month element. Rather, it must adduce sufficient evidence to support a reasonable inference that at least three months elapsed between the first and last sexual acts. Generic testimony is certainly capable of satisfying that requirement, as the hypothetical examples listed by the Supreme Court in *Jones* illustrate. Indeed, as the *Jones* court held, despite the general acceptance of such generic testimony, "the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period." (*People v. Jones, supra*, 51 Cal.3d at p. 316; see *People v. Hord* (1993) 15 Cal.App.4th 711, 720 [19 Cal.Rptr.2d 55].) That is, while generic testimony may suffice, it cannot be so vague that the trier of fact can only speculate as to whether the statutory elements have been satisfied.

A similar analysis applies to defendant's sufficiency of the evidence claim regarding count 2, his lewd act conviction for conduct in September 2004. It was alleged, and the jury found, defendant committed a lewd act on the victim on or between September 18 and 30, 2004, in violation of section 288, subdivision (c)(1), which requires that the victim be 14 or 15 years old at the time of the offense. As stated above, there was no evidence as to when defendant abused the victim in September—before and/or after her 14th birthday. As the evidence did not support a reasonable inference that the crime occurred when the victim was 14 years old, the conviction must be reversed.[3]

---

[3] On our request, the parties submitted supplemental briefing on the question of whether the continuous sexual abuse conviction and the lewd act conviction for conduct in September 2004 should be reduced to simple battery under section 242 on the theory that battery is a lesser included offense (see § 1181, subd. 6). On further consideration, we find such a reduction would be inappropriate as to either conviction because misdemeanor battery is subject to a one-year statute of limitations (§ 802, subd. (a)). It is well established that the limitation of time applicable to an offense that is necessarily included within a greater offense is the limitation of time applicable to the lesser included offense, regardless of the limitation of time applicable to the greater offense. (§ 805, subd. (b); see *People v. Statum* (2002) 28 Cal.4th 682, 699 [122 Cal.Rptr.2d 572, 50 P.3d 355].) Here, the lewd act conviction was alleged and found

We reject, however, defendant's sufficiency challenge to count 4, one of the two lewd act convictions for conduct in October 2004. Defendant asserts the victim's testimony concerning whether he molested her more than once in that month was so self-contradictory that it cannot be deemed sufficient evidence under the federal Constitution's due process standard. Reviewing the victim's testimony in context and applying the proper deferential standard of review, we find the contradictions in her testimony merely raised a credibility issue for the jury to resolve.

Consistent with federal due process concerns, our Supreme Court has repeatedly and consistently explained: " ' "Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" . . . .' [Citation.]" (*People v. Barnes* (1986) 42 Cal.3d 284, 306 [228 Cal.Rptr. 228, 721 P.2d 110], citing *People v. Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267], overruled on other grounds in *People v. Flannel* (1979) 25 Cal.3d 668, 685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; see *People v. Cantrell* (1992) 7 Cal.App.4th 523, 538 [9 Cal.Rptr.2d 188].)

The victim's testimony provided the sole evidence concerning sexual abuse in October. She testified on cross-examination that defendant molested her more than two times in that month. On recross-examination, defense counsel asserted that she had testified that defendant did not molest her at all in October of 2004. The victim denied that assertion, responding that she had said "about once." When defense counsel asked her to state the number of times defendant had molested her in October, the victim said, "I don't really remember much of October." Contrary to defendant's contention, the victim's statements on recross-examination did not amount to a clear recantation of her prior testimony. We hold a reasonable juror could have understood the victim's "about once" statement mainly as a refutation of counsel's assertion that she had previously denied suffering any sexual abuse in October. Similarly, when she stated she did not "remember much" about that month, a reasonable juror could have understood her as merely explaining that she

---

to have occurred outside the one-year period. Regarding the continuous sexual abuse conviction, given the uncertainty of the date on which the lewd acts occurred, it would be impossible to find that one of them occurred within the time period.

could not recall the precise number of times she suffered abuse at defendant's hands during that month, which was consistent with her prior testimony that there had been at least two instances of abuse that month.

Accordingly, we find the contradictions in the victim's testimony did not render it impossible to believe or obviously false, but merely presented the jury with a credibility determination that is not reviewable on appeal. (See *People v. Barnes, supra,* 42 Cal.3d at p. 306; *People v. Cantrell, supra,* 7 Cal.App.4th at p. 538.) Defendant's reliance on two intermediate federal court opinions—*Mackett v. United States* (7th Cir. 1937) 90 F.2d 462 and *U.S. v. Kenyon* (8th Cir. 2007) 481 F.3d 1054—is misplaced. In the former case, the only evidence supporting an element of the underlying conviction had been provided by a witness who unambiguously admitted a lack of personal knowledge as to an essential fact. (*Mackett v. United States, supra,* 90 F.2d at p. 464.) In the latter case, all of the victim's testimony concerning the sexual assault was inherently ambiguous. (*U.S. v. Kenyon, supra,* 481 F.3d at p. 1068.) As we have explained, defendant's jurors had an evidentiary basis for finding the victim had personal knowledge that defendant committed two or more lewd acts upon her in October. In any event, we are not bound by the decisions of lower federal courts. (*People v. Avena* (1996) 13 Cal.4th 394, 431 [53 Cal.Rptr.2d 301, 916 P.2d 1000].)

In defendant's final sufficiency of the evidence challenge, he contends there was no substantial evidence of the force or duress element of his rape conviction. We disagree. The record contains reasonable, credible, and solid evidence that defendant accomplished the rape with sufficient force to support a finding of nonconsensual sexual intercourse.

■ As our Supreme Court instructs: "Rape is a general intent offense. [Citation.] Forcible rape is defined as 'an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [¶] . . . [¶] (2) [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another.' (§ 261, subd. (a)(2).)" (*People v. Griffin* (2004) 33 Cal.4th 1015, 1022 [16 Cal.Rptr.3d 891, 94 P.3d 1089] (*Griffin*), fn. omitted.) As used in the statute, "force" is defined in accordance with common usage. In a forcible rape prosecution, the kind of force necessary need *not* be substantially different or greater than the physical force normally inherent in an act of consensual sexual intercourse: "To the contrary, it has long been recognized that 'in order to establish force within the meaning of section 261, [former] subdivision (2), the prosecution need only show the defendant used physical

force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].' [Citation.]" (*Id.* at pp. 1023–1024.) In fact, the *Griffin* court reaffirmed that the kind of physical force applied is immaterial, and " ' " 'may consist in the taking of indecent liberties with a woman, or laying hold of and kissing her against her will.' " ' [Citation.]" (*Id.* at p. 1024.)

█ It must also be understood that in 1980, the Legislature amended the rape statute to eliminate the victim resistance requirement. "[U]nder the modern rape statute, the jury no longer evaluates the element of force in terms of whether it physically prevents the victim from resisting or thwarting the attack." (*Griffin, supra*, 33 Cal.4th at p. 1025.) The Legislature's amendment was premised on the recognition that the " 'fundamental wrong' " to be addressed by modern rape law is not the application of physical force that causes physical harm, but the guarding of " 'a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent. . . .' [Citation.]" (*Ibid.*) Accordingly, under current law, the force element plays a supporting role, designed to ensure that the act of intercourse was undertaken against a victim's will. (*Ibid.*) It follows that "the degree of force utilized is immaterial." (*Ibid.*) In sum, "[t]he gravamen of the crime of forcible rape is a sexual penetration *accomplished against the victim's will* by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (*Id.* at p. 1027.)

In this case, the evidence defendant used force to accomplish intercourse with the victim against her will was substantial and compelling. Viewing the evidence in the light most favorable to the prosecution, we note that defendant was the victim's grandfather and at least 40 years older than she. Defendant was also an authority figure for her, who helped raise her—and had dealt out corporal punishment to her when she was younger. He was also a large man. At all times in which he molested the victim, he was the only adult in the household. In the months leading up to the January 2005 incident, defendant had committed repeated acts of sexual abuse upon the victim, mainly involving his touching her vagina on top of her clothing. When defendant tried to reach his hand "inside" her pants, however, the victim would try to push him away; she consistently tried to stop him from touching her vagina underneath her clothes. Defendant warned the victim not to report the sexual abuse to anyone, telling her that "it really wouldn't matter" because nobody would believe her. Thus, the evidence showed at a minimum that prior to the rape incident, the victim did not welcome defendant's sexual advances and actively resisted his attempts to touch her genitalia directly.

As to the incident itself, defendant opened the victim's bedroom door and entered the room without permission. He closed the door behind him and almost immediately jumped on the bed and climbed on top of the victim, pulling down her pants and underwear, and unzipping his pants. Defendant pulled the victim's legs wide apart, pushed her knees back, and painfully penetrated her vagina with his penis. She tried to push him off, but could not. Under the circumstances, those acts support a reasonable inference of violence to overcome her will. Moreover, we disagree with defendant's assertion that the victim remained entirely passive during the rape incident. Defendant erroneously supports his argument with a selection of the aspects of her testimony that support an inference that she offered no resistance because she was psychologically unable to move because she was "in total shock," while ignoring the contrary testimony. Applying the deferential standard proper to appellate review, however, we hold the evidence as a whole supports the reasonable inference that the victim tried to push defendant away, but was unsuccessful because defendant pinned her down on the bed—not merely that the victim was too frightened to move.

Contrary to defendant's primary argument, neither the surrounding circumstances nor the act of intercourse itself bore any reasonable indicia of consensual intercourse between two adults. (Cf. *Griffin, supra*, 33 Cal.4th at p. 1027.) Indeed, defendant's analogy to consenting adults is dubious, if not absurd, in light of defendant's status as the victim's grandfather and disciplinarian, along with the great disparity in age and size between the two, not to mention the victim's consistent efforts to push defendant away when he tried to touch her genitalia directly. The manner of defendant's repeated sexual assaults on the victim, including his warning her not to report the incidents, bespeaks psychological coercion, not normal sexual relations. (See *People v. Cochran* (2002) 103 Cal.App.4th 8, 15–16 [126 Cal.Rptr.2d 416].)

In *Griffin*, the Supreme Court found sufficient evidence of the force element of rape in materially indistinguishable circumstances. The *Griffin* court found substantial evidence of force, despite the lack of evidence that the victim demonstrated any unwillingness to the defendant's initial sexual advances or objected to the defendant's conduct until after he had pinned her to the floor and penetrated her vagina. The reasoning in *Griffin* is dispositive here: "[The victim] had never previously encountered defendant's attempt to have intercourse with her, as this was his first attempt. The jury could reasonably infer that by pinning her arms to the floor, defendant was able to achieve penetration on the occasion in question without [the victim's] consent before she was able to register her objection. The circumstance that defendant did not apply additional force to continue the intercourse after [the victim] objected does not eliminate his culpability for his initial penetration of [the victim] against her will by use of force. [¶] The evidence, taken as a whole

and viewed in the light most favorable to the guilty verdict, is sufficient to support the conviction of forcible rape." (*Griffin, supra,* 33 Cal.4th at p. 1029.)

Here, as in *Griffin,* the onset of defendant's intercourse was sudden and unexpected, giving the victim little opportunity to object. Although the victim—unlike the victim in *Griffin*—did not offer direct testimony as to her lack of consent, there was ample evidence to support that reasonable inference. The victim had never welcomed or initiated any sexual contact with defendant. More significantly, she actively resisted defendant's repeated attempts to touch her genitalia under her clothes—and, during the rape incident, the victim tried to push defendant away. Under these circumstances, the jury could reasonably infer that defendant overcame the victim's lack of consent by his use of force in pulling down her pants and underwear, and pushing her legs wide apart and pulling her knees up. It would strain credulity to believe that the same girl who tried repeatedly to rebuff her grandfather's attempts to put his hand inside her underwear would suddenly consent to intercourse with her abuser.

Defendant's reliance on *People v. Espinoza* (2002) 95 Cal.App.4th 1287 [116 Cal.Rptr.2d 700] to support his argument that there was insufficient evidence of duress is unavailing. Having found sufficient evidence that defendant used force to overcome the will of the victim to resist defendant's sexual attacks, we do not reach the question of whether the rape conviction was independently supportable under a duress theory. In any event, we find *Espinoza* wholly distinguishable. In *Espinoza,* there was no evidence of force in connection with any of the sexual offenses. At no time did the victim in *Espinoza* resist or object to defendant's acts of sexual molestation or attempted rape. Most significantly, during the attempted rape, the *Espinoza* defendant did not forcibly immobilize his victim to accomplish the penetration, but allowed the victim to move away to avoid being penetrated. (*Id.* at p. 1293.) As a result, the only potentially viable prosecution theory in *Espinoza* was duress. (*Id.* at p. 1321.)

B.–H.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 86.

## DISPOSITION

The convictions on count 1 for continuous sexual abuse and on count 2 for committing a lewd act upon a child are reversed. The cause is remanded to the trial court for resentencing on the remaining counts, including discretionary sentencing under the applicable version of section 667.6, as well as section 1170, subdivision (b), as to defendant's rape conviction on count 9. In all other respects, the judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.