Filed 12/4/20  P. v. Yang CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>SENG YANG,<br><br>　　　Defendant and Appellant. | A157916<br><br><br>(Humboldt County<br>Super. Ct. No. CR1800127) |

Defendant Seng Yang was convicted of multiple counts of forcible sex crimes, continuous sexual abuse, and commercial sexual exploitation of his minor daughter, Jane Doe.  On appeal, Yang contends that (1) the trial court erred when it failed to instruct the jury on lesser included consensual sex offenses; and (2) the evidence was insufficient to support his two convictions of forcible rape of a child under age 14.  We affirm.

## I.  BACKGROUND

### A.  Factual Background

Yang was charged with 16 crimes against Doe:  continuous sexual abuse (Pen. Code § 288.5, subd. (a))[1] (count 1); aggravated sexual assault of a child under age 14 by forcible rape (§§ 261, subd. (a)(2), 269, subd. (a)(1))

---

[1] All further section references will be to the Penal Code unless otherwise indicated.

(sections 261(a)(2) and 269(a)(1)) (counts 2 and 3); forcible oral copulation of a minor over age 14 (former § 288a, subd. (c)(2)(C))[2] (former section 288a(c)(2)(C)) (counts 4 and 9); forcible rape of a child over age 14 (§ 261, subd. (a)(2)) (counts 5, 7, 8, 10, 11, and 13); forcible sodomy of a child over age 14 (§ 286, subd. (c)(2)(C)) (section 286(c)(2)(C)) (count 6); assault with intent to rape a minor (§§ 220, subd. (a)(2), 261, subd. (a)(2)) (count 12); contact with minor for a sex offense (§ 288.3, subd. (a)) (count 14); exhibiting a minor in pornography (§ 311.2, subd. (b)) (count 15); and using a minor for commercial sex acts (§ 311.4, subd. (b)) (count 16).

Doe was 16 years old when she testified at trial. She testified that Yang first engaged in sexually inappropriate behavior towards her when she was 11 or 12 years old. On the first occasion, she woke up in bed with him "on top of [her]," and she felt "something pressing against [her]" from Yang's lower body. She testified that she was able to push Yang off, asking him: "What are you doing? Do you need to go to the bathroom or something?" She said Yang left, but then returned and was "on top of [her] . . . shaking a lot" for "around 40 minutes to an hour."

Doe testified that when she was around 12 years old, she was in bed and Yang came in and began touching his penis with one hand "moving really fast," while putting his other hand on Doe's vagina over her shorts. She testified that she "pretended to wake up" and told Yang "to go to his room." She testified that Yang engaged in this behavior "around two times a week." She also testified that when she was 12 years old, Yang put his hands under her clothes and penetrated her vagina with his fingers.

---

[2] Former section 288a was recently amended and renumbered as section 287. (Stats. 2018, ch. 423, § 49.)

### 1. *Testimony Regarding Forcible Rape Before Doe Was 14 Years Old.*

Doe testified that she tried to tell her mother about Yang's sexual abuse "during eighth grade, so [she] was possibly turning 13 at the time." She testified that she sent a text message to her mother saying she wanted to talk about something, but when they got in the car to go to school Doe "hesitated." Doe said when she returned from school, Yang was "visibly upset" because he had been questioned by her mother about whether something was wrong. Doe testified that Yang took her to his room, threw her on the bed, and "decided to take off [her] clothes and rape [her]." She testified that she "had closed [her] legs and guarded [her] legs with [her] arms," but Yang pinned her arms above her head and slapped her legs. She testified that she was screaming, but Yang told her "to be quiet, to stop yelling and that there was no point."

Doe testified that Yang later asked her to come to his room to talk. She testified that he started "apologizing" for what had happened, but "then afterwards he proceeded to rape [her]." She testified that Yang held her down as she was trying to push him back, and that she told him "No" and "you just said you weren't going to do it again and here you are doing it again." She testified that she was 13 at the time.

On cross-examination, Doe reiterated that the first time she had "sexual intercourse" with Yang was in eighth grade, and that she turned 14 years old in January of her eighth-grade year. When asked whether she was "clear whether you were 13 or 14 at the time," Doe testified that she "couldn't really remember the time." On redirect, after having her recollection refreshed with a transcript of her January 5, 2018 forensic interview, Doe testified she was "[p]ossibly 12 soon turning 13" years old. On recross, when

asked if she was not "sure what age in your eighth grade year you were when you first had sexual intercourse" with Yang, Doe responded, "Yes."

### 2. *Testimony Regarding Later Crimes Against Doe*

Doe testified that when she was still in eighth grade, Yang put his mouth on her vagina and penetrated her vagina and anus with his penis. She testified that this also happened when she was in ninth grade. She testified that when she attempted to physically or verbally resist Yang, he "would get really angry and either slap [her] face or . . . grab on to [her] wrist and squeeze them really hard." She testified that she would be "kicked in the head" by Yang "for not complying." She also testified that Yang told her he had started videotaping these sexual acts. She said Yang told her the "family was going broke, and that we needed money, and so in order to get money he had to sell videos to people so we could feed our family." She testified that she was not "okay" with being videotaped, but "knew that our family was poor an didn't have a lot of money, and so [she] just believed him on that." When asked whether she agreed to make these videos with Yang, she testified that "it was forced upon [her], and [she] didn't know they were being filmed anyway, so [her] opinion wouldn't have mattered, but [she] still agreed anyway because [she] thought it was the best way to make money."

Doe testified that her mother walked in during one of these sexual acts. She said Yang was penetrating her vagina with his penis, but he hid behind a table when he heard a noise. Doe testified that her mother came into the room, saw them both, said "Seriously," and left. Doe testified that her mother did nothing to prevent Yang's abuse.

Doe testified that the last time Yang raped her was just before her 15th birthday. She testified that she had "stopped resisting" and "just did whatever he told [her]" because she was "afraid of him hitting [her] or

4

exploiting [her]." She said she went to the police station with her sister on the day before her 15th birthday, because she "was thinking that maybe the rape would occur again," and "felt threatened or scared and kind of panicked."

Doe's mother testified at trial after entering into an immunity agreement with the People. She testified that on one occasion she had walked into Doe's bedroom and found Yang behind the table beside the bed, not wearing a shirt. After Yang asked her to leave the room, she left and went to the bathroom. She testified that Yang then asked her to go talk to Doe and "let her know that everything is okay." She testified that she did not go talk to Doe. She said she did nothing in response to the incident, because she "didn't know how to respond."

### 3. Messages, Photos, and Videos Regarding Crimes Against Doe

Doe testified that Yang would communicate with her through Facebook and text messages, some of which were admitted into evidence. For example, on September 1, 2017, Yang sent a Facebook message to Doe stating: "Wtf, you don't read bitch…better fucken read bitch…so next time you don't end up eating my fist in yo..mouth ma..fuker..." On December 23, 2017, Yang sent a string of Facebook messages to Doe stating: "Fuck you……..die"; "Mother fucker"; "You ain't nothing but shit to me"; "Fuck……you….fucker fucker slut hoe motherfucker"; and "Your phone will break tomorrow." Yang subsequently sent the messages "Sorry…about the text I did not tell you the plan" and "Tonight when mommy falls asleep then I wake you up. We do it okay.." Jane Doe asked "why can't you just do this mom" and later replied, "Uh" and "Ew."

In another set of messages, dated July 31, 2017, it appeared that Facebook messages were sent from Doe's account to Yang's account stating:

5

"Come my room" and "I need it bruh." Doe testified that she did not write those messages, explaining that Yang would "take [her] phone a lot when [she got] in trouble, so [she was] assuming that this was a time when [she] had done something that [Yang] didn't like so he took [her] phone. He ha[d] full access to it."

Three videos from Yang's phone and Google drive account depicting sexual acts between Yang and Doe were admitted into evidence and played for the jury. Snapshot photos from the videos depicting Yang looking at the camera and taking off his pants were also admitted into evidence.

## B. Motion for Acquittal and Jury Instructions

At the close of the People's case, defense counsel moved for acquittal on counts 2 and 3 based on failure of proof that Doe was under the age of 14 at the time of those offenses. (§ 1118.1.) The trial court denied the motion.

During discussion among the trial court and counsel on jury instructions, defense counsel requested that the trial court instruct on several lesser included offenses, including CALCRIM No. 1070 (unlawful sexual intercourse, § 261.5, subd. (d) (section 261.5(d))); CALCRIM No. 1081 (oral copulation with a minor, former § 288a, subd. (b)(2) (former section 288a(b)(2))); and CALCRIM No. 1091 (sodomy with a minor, § 286, subd. (b)(2) (section 286(b)(2))). The trial court declined to give these three instructions, concluding they were not "appropriate" and not listed as lesser included offenses in the CJER Mandatory Criminal Jury Instructions Handbook.

## C. Verdict and Sentence

The jury found Yang guilty as charged. After dismissing count 14 on the People's motion, the trial court sentenced Yang to 161 years to life. This appeal followed.

6

## II.  DISCUSSION

Yang pursues two arguments in this appeal.  First, he argues that his convictions on the 11 non-consensual sex offenses should be reversed because the trial court erred by failing to instruct the jury on lesser included consensual sex offenses.  Second, he argues that his convictions on the two counts of forcible rape of a child under age 14 should be reversed because the evidence was insufficient to establish that Doe was younger than 14 at the time of the offenses.  We address, and reject, each argument in turn.

### A.  Lesser Included Offenses on Non-consensual Sex Offenses

Yang contends that the trial court erred in failing to instruct the jury on consensual sex offenses as lesser included offenses to the 11 non-consensual sex offenses charged.  Specifically, he claims that the trial court should have given the three lesser included offense instructions requested by defense counsel:  unlawful sexual intercourse under section 261.5(d); oral copulation with a minor under former section 288a(b)(2); and sodomy with a minor under section 286(b)(2).  He also claims that the trial court should have given, sua sponte, three other lesser included offense instructions: unlawful sexual intercourse under section 261.5, subdivision (c) (section 261.5(c)); oral copulation with a minor under former section 288a, subdivision (b)(1) (former section 288a(b)(1)); and sodomy with a minor under section 286, subdivision (b)(1) (section 286(b)(1)).

### 1.  General Legal Principles

We begin with the legal principles that govern these claims.  A trial court is " ' "obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request." ' "  (*People v. Avila* (2009) 46 Cal.4th 680, 704 (*Avila*).)  Accordingly, the trial court has a duty to instruct on any "lesser

necessarily included offense" that is supported by substantial evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) "This substantial evidence requirement is not satisfied by ' "*any* evidence . . . no matter how weak," ' but rather by evidence from which a jury composed of reasonable persons could conclude 'that the lesser offense, but not the greater, was committed.' " (*Avila*, *supra*, 46 Cal.4th at p. 705.)

"To determine if an offense is lesser and necessarily included in another offense . . . we apply either the elements test or the accusatory pleading test." (*People v. Shockley* (2013) 58 Cal.4th 400, 404.) The elements test is satisfied " 'if the statutory elements of the greater offense include all of the statutory elements of the lesser offense.' " (*Ibid.*) The accusatory pleading test is satisfied " 'if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense.' " (*Ibid.*)

"On appeal, we review independently the question whether the trial court failed to instruct on a lesser included offense." (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.) As a general matter, however, such failure in a noncapital case does not require reversal "unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Breverman*, *supra*, 19 Cal.4th at p. 165.) "Such posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Id.* at p. 177.) A conviction of the charged offense may be reversed in consequence of this form

of error only if, "after an examination of the entire cause, including the evidence" (Cal. Const., art. VI, § 13), it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

### 2. The Requested Instructions Are Not Lesser Included Offenses

We first consider the requested instructions. Yang acknowledges, correctly, that the three requested instructions are not lesser included offenses under the elements test. Offenses under section 261.5(d), former section 288a(b)(2), and section 286(b)(2) include elements that are not in any of the 11 charged non-consensual sex offenses: namely, that Yang "was at least 21 years old at the time of the act." (CALCRIM Nos. 1070, 1081, and 1091.) Yang also acknowledges that the offenses do not satisfy the traditional application of the accusatory pleading test because the information contains no allegations regarding Yang's age.

Instead, Yang's argument relies on a so-called "expanded accusatory pleading test" applied in *People v. Ortega* (2015) 240 Cal.App.4th 956 (*Ortega*), in which the court considered evidence presented at the preliminary hearing to conclude that instructions on a lesser included offense should have been given. (*Id*. at pp. 967–970.) But we have previously declined to follow *Ortega* after concluding that we remain bound by the Supreme Court's directive for courts to " 'consider *only* the pleading for the greater offense.' " (*People v. Macias* (2018) 26 Cal.App.5th 957, 964 (*Macias*), citing *People v. Montoya* (2004) 33 Cal.4th 1031, 1036 (*Montoya*).) We decline to stray from that position here. As we noted in *Macias* and again note here, no published decision has followed *Ortega*'s approach of considering matters outside the pleadings. (*Macias, supra*, 26 Cal.App.4th at p. 964.) Thus, as we did in *Macias*, we follow the Supreme Court's definition of the accusatory pleading

9

test and decline to consider evidence that might have been presented at the preliminary hearing. We therefore conclude here that the three instructions requested at trial are not lesser included offenses of any of the 11 charged non-consensual sex offenses, and thus the trial court did not err in declining to give the instructions.

### 3. *Yang Was Not Entitled to Sua Sponte Instructions*

We next turn to the three instructions that Yang argues should have given by the trial court sua sponte. The People properly concede that under the elements test the offenses under section 261.5(c), former section 288a(b)(1), and section 286(b)(1) are lesser included offenses of the non-consensual offenses charged. Unlawful sexual intercourse under section 261.5(c) is a lesser included offense as to counts 2 and 3 for aggravated assault of a child under age 14 by means of forcible rape under sections 261(a)(2) and 269(a)(1).[3] (See CALCRIM Nos. 1000, 1123 and 1071.) Oral copulation of a minor under former section 288a(b)(1) is a lesser included offense as to counts 4 and 9 for forcible oral copulation of a minor over age 14 under former section 288a(c)(2)(C). (See CALCRIM Nos. 1015 and 1082.) Sodomy of a child under section 286(b)(1) is a lesser included offense as to count 6 for forcible sodomy of a child over age 14 under section 286(c)(2)(C). (See CALCRIM Nos. 1030 and 1092.)

Because these three instructions satisfy the elements test, we must decide whether substantial evidence was presented so as to have triggered the trial court's obligation to instruct on them. (*Avila, supra,* 46 Cal.4th at p. 705.) Yang argues that this evidence includes (1) the July 31, 2017

---

[3] Yang also argues that section 261.5(c) is a lesser included offense to counts 5, 7, 8, 10, 11, and 13 under the "expanded accusatory pleading test." We reject this argument for the reasons described above.

Facebook messages sent from Doe's account indicating a willingness to engage in sex with Yang; (2) Doe's testimony that she agreed to videotape sexual acts with Yang; (3) the absence of any bruises or reports of injuries to substantiate Doe's claims of physical violence by Yang; and (4) Doe's failure to report the offenses to her mother.

We are not persuaded that this evidence compelled the trial court to give the instructions, because none of it would lead a reasonable person to conclude that Yang had committed the lesser consensual, but not the greater non-consensual, sex offenses. (*Avila*, *supra*, 46 Cal.4th at p.705.) First, in uncontradicted testimony, Doe denied having sent the July 31, 2017 Facebook messages to Yang and explained that Yang often confiscated her phone, consistent with the Facebook message from Yang threatening to break her phone. Even assuming the messages were sent by Doe, Yang points to no evidence tying these messages to any specific incidents underlying counts 2, 3, 4, 6, or 9. Moreover, Doe testified that she had physically and verbally resisted Yang on multiple occasions, but eventually stopped because she feared further physical violence and exploitation from him. "The manner of defendant's repeated sexual assaults on the victim, including his warning her not to report the incidents, bespeaks psychological coercion, not normal sexual relations." (*People v. Mejia* (2007) 155 Cal.App.4th 86, 101.) Second, Doe testified that Yang had started videotaping the sexual acts without her knowledge, but she later agreed to the videos because Yang told her that he had to sell the videos to "feed our family." Again, this uncontradicted testimony evidences Yang's coercion, not Doe's consent. Third, Doe's testimony that Yang would kick her head, slap her legs or face, and grab her wrist was consistent with the violent and threatening Facebook messages Yang sent to Doe. Fourth, Doe's failure to report the offenses to her mother is

11

easily explained by the testimony from both Doe and the mother that the mother walked in during one incident, but did nothing to protect Doe from further abuse. Again, none of this evidence would lead a reasonable person to conclude that Yang had committed the lesser consensual, but not the greater non-consensual, sex offenses. (*Avila*, *supra*, 46 Cal.4th at p. 705.)

In sum, we conclude that the trial court did not err in failing to instruct the jury on section 261.5(c), 261.5(d), former section 288a(b)(1), former section 288a(b)(2), section 286(b)(1), or section 286(b)(2) offenses. Having determined no error, we need not decide whether the failure to give the instructions was prejudicial. (*Breverman*, *supra*, 19 Cal.4th at p. 165.)

## B. *Substantial Evidence Regarding Doe's Age for Counts 2 and 3*

Yang also argues that there was insufficient evidence of Doe's age to support his two convictions for aggravated sexual assault of a child under age 14 by forcible rape. Yang contends that the evidence establishes, at most, that the two acts were committed when Doe was in eighth grade, but does not establish that she was 13 (rather than 14) years old at the time.

To evaluate claims challenging the sufficiency of the evidence, we review the whole record to determine whether there is " 'substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We review the evidence " 'in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.' " (*Ibid.*) Reversal on this ground is unwarranted unless " ' "it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" the jury's verdict." ' " (*Ibid.*)

In determining the sufficiency of the evidence, "a reviewing court resolves neither credibility issues nor evidentiary conflicts." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*Ibid.*) Moreover, the testimony of a single witness is sufficient to support a conviction unless such testimony is "physically impossible or inherently improbable." (*Ibid.*)

Here, Doe's testimony provided the sole evidence regarding her age when the first two incidents of rape occurred. Doe testified that she was raped by Yang for the first time "during eighth grade, so [she] was possibly turning 13 at the time," and for the second time when she was 13 years old. On cross-examination, defense counsel asked about the first incident: "And you weren't clear whether you were 13 or 14 at the time?" Doe answered that "[she] couldn't really remember the time." On redirect, the prosecution asked: "And do you -- is it that you don't remember today what age you were the first time?" Doe answered, "I don't remember today." Doe then agreed that reviewing the transcript of her January 5, 2018 forensic interview might refresh her recollection, and that she might have remembered more details at that time than she did at trial. After reviewing the transcript, Doe testified she was "[p]ossibly 12 soon turning 13" years old when she was raped by Yang for the first time. On recross-examination, defense counsel asked: "And you aren't sure what age in your eighth grade year you were when you first had sexual intercourse with [Yang]?" Doe answered, "Yes."

On this record, we conclude that Doe's statements on cross- and recross-examination did not amount to a clear recantation of her prior testimony, and that a reasonable juror could have understood Doe's statements as merely explaining that she could not recall her exact age, but that she was either 12 or 13 years old the first time she was raped by Yang.

13

(See *Mejia*, *supra*, 155 Cal.App.4th at pp. 98−99 [rejecting sufficiency challenge where victim testified that she could not " 'remember much' " about abuse by defendant in a particular month and could not recall the precise number of times she was abused in that month].) Doe's statements thus did not render her previous testimony "impossible to believe or obviously false, but merely presented the jury with a credibility determination." (*Id.* at 99.) Ultimately, the jury believed Doe's testimony that she was younger than 14 when she was raped for the first two times by Yang, and we cannot second guess the jury's credibility determination on appeal. (*Ibid.*) We thus conclude that the evidence was sufficient to support Yang's two convictions for aggravated sexual assault of a child under age 14 by forcible rape.

### III. DISPOSITION

The judgment is affirmed.

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Sanchez, J.


*People v. Yang*  A157916


15