Filed 8/4/14  P. v. Scott CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

**THE PEOPLE,**

**Plaintiff and Respondent,**                              **A139229**

**v.**                              **(Alameda County
Super. Ct. No. H49457)**

**DANIEL JAMES SCOTT,**

**Defendant and Appellant.**

_____|

A jury convicted Daniel James Scott of misdemeanor assault (Pen. Code, § 240)[1] and felony continuous sexual abuse of his daughter, a child under 14 (§ 288.5, subd. (a)). The trial court sentenced him to state prison.

Scott appeals.  He contends the court erred by instructing the jury pursuant to CALCRIM No. 207 that the prosecution need not prove the crimes took place on specific dates, but rather "happened reasonably close to those dates."  Scott also claims the court erred by instructing the jury pursuant to CALCRIM No. 307 that the prosecution need not prove "the defendant had a motive to commit any of the crimes charged."

We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

---

[1]      Unless noted, all further statutory references are to the Penal Code.

The People charged Scott with aggravated sexual assault of his daughter, a child seven to 14 years old (§ 269, subd. (a)(5)) (count 1), forcible oral copulation (§ 288a, subd. (c)(2)) (count 2) and continuous sexual abuse of his daughter, a child under 14 (§ 288.5, subd. (a)) (count 3.)

*Trial*

Jane Doe was born in March 1995. Scott is Doe's father. Scott sexually molested Doe about 500 times from 2002 — when she was seven — until December 2009 or January 2010, when she was 14. Doe reported the abuse in April 2010, shortly after she turned 15.

Doe lived in a house with her paternal great grandmother from age four to 14. Scott moved into the house when Doe was four. When Doe was seven years old, Scott began touching her breasts. He did it at night, predominately in his room. When Doe turned nine, Scott began to "wrestle" with her by rubbing his penis against her vagina while he touched her breasts. Doe always tried — unsuccessfully — to stop the abuse; Scott sometimes pinned Doe's arms down as he rubbed against her.

The abuse escalated when Doe turned 10. Scott touched Doe's vagina with his hand under her underwear and forced her to masturbate him. Around this time, Scott was molesting Doe "once or twice a month" and sometimes up to "seven times" a month. When Doe was 12 or 13, Scott digitally penetrated her; on another occasion, he pulled her head back and put his penis in her mouth, causing Doe to feel like she "was being choked."

Doe tried to avoid Scott, but she did not report the abuse because she was afraid no one would believe her and she "would have to go back to see [her father,] and he'd be angry." Doe became depressed and started cutting herself with a knife. In April 2010, near the end of her freshman year in high school, Doe told classmates about the abuse. Doe also told her high school counselor Scott started abusing her when she "was about 7 years old" and "the last time that it took place [was] . . . December of 2009." Doe repeated the allegations to a police officer and to a counselor at Child Abuse Listening, Interviewing and Coordination Center (CALICO).

2

Scott did not testify. The defense theory was Doe fabricated the allegations in part because she wanted to live with her mother. Defense counsel tried to demonstrate Doe was "unbelievable" and tried to show her "entire story [was] suspect" by focusing on minor inconsistencies between how Doe described the abuse to the police and to the CALICO counselor.

In her closing argument, the prosecutor claimed the molestation occurred over "a big time frame" and explained: "[t]here's not an adult who would be able to specify all of the events that occurred within [that] time. [¶] [T]here's too many times to remember." Additionally, the prosecutor noted "there are so many different acts [of abuse] that occurred . . . that being able to prove a specific date really becomes an impossibility." The prosecutor argued, however, most of the molestation occurred well before Doe turned 14: "we know between the ages of 7 and 12 years old, many of the acts occurred."

### Jury Instructions

Pursuant to CALCRIM No. 207, the court instructed the jury: "It is alleged that the crime of aggravated sexual assault of a child under the age of 14 occurred between March 28, 2007 and March 27, 2009, the crime of forcible oral copulation occurred between December 15, 2009 and January 2010, and that continuous child sex abuse continued between March 2002 and March 2007. The People are not required to prove that the crime took place exactly on that date but only that it happened reasonably close to those dates."[2]

The court also instructed the jury pursuant to CALCRIM No. 370 that "[t]he People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶] Having a motive may be a factor tending to show that the

---

[2] The court also instructed the jury pursuant to CALCRIM No. 1120 that to prove Scott guilty of continuous sexual abuse of a child under the age of 14, the prosecution "must prove that: [¶] . . . [¶] Two, the defendant engaged in three or more acts of substantial sexual conduct or lewd or lascivious conduct with the child; [¶] Three, three or more months passed between the first and last acts; [¶] And four, the child was under the age of 14 years at the time of the acts."

3

defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty."

### Verdict and Sentencing

The jury convicted Scott of misdemeanor assault (§ 240), a lesser included offense of aggravated sexual assault of child seven to 14 years old (§ 269, subd. (a)(5)) (count 1) and continuous sexual abuse of a child under 14, a felony (§ 288.5, subd. (a)) (count 3). The jury could not reach a verdict on forcible oral copulation (§ 288a, subd. (c)(2)) (count 2) and the prosecution dismissed that charge. The court stayed Scott's sentence on count 1 and imposed the middle term of 12 years for count 3.

DISCUSSION

In reviewing a claim of instructional error, we "consider the jury instructions as a whole, and not judge a single jury instruction in artificial isolation . . . ." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 276.) "When a claim is made that instructions are deficient, we must determine whether their meaning was objectionable as communicated to the jury. . . . The meaning of instructions is . . . determined under a . . . test of whether there is a 'reasonable likelihood' that the jury misconstrued or misapplied the law in light of the instructions given, the entire record of trial, and the arguments of counsel." (*Ibid*. 276.) We " ' "assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citations].' 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) We review these claims notwithstanding Scott's failure to object to the instructions in the trial court. (§ 1259; *People v. Konow* (2004) 32 Cal.4th 995, 1024-1025.)

I.

<em>The Court Did Not Err by Instructing the Jury with CALCRIM No. 207</em>

Section 288.5 prohibits the continuous sexual abuse of a child. It requires proof, among other thing, the defendant engaged in three or more acts of substantial sexual conduct or lewd and lascivious conduct with the child, and that the child was under 14

4

when the acts occurred.  (§ 288.5, subd. (a); *People v. Mejia* (2007) 155 Cal.App.4th 86, 93-94.)  Scott contends the "'reasonably close' language" in CALCRIM No. 207 "undercut" his case and impermissibly lessened the state's burden of proof because "the timing of the charged abuse was a critical part of the defense case."  According to Scott, the instruction allowed the jury to convict him of continuous sexual abuse based on conduct occurring after Doe's 14th birthday.  We disagree.

"Ordinarily, the People need not plead the exact time of commission of an alleged offense.  [Citation.]  However, if the defense is alibi or . . . lack of opportunity to commit the offense, the exact time of commission becomes critically relevant to the maintenance of the defense.  An instruction which deflects the jury's attention from temporal detail may unconstitutionally impede the defense.  The defendant is entitled as a matter of due process to have the time of commission of the offense fixed in order to demonstrate he was elsewhere or otherwise disenabled from its commission."  (*People v. Barney* (1983) 143 Cal.App.3d 490, 497.)  In other words, CALCRIM No. 207 should not be given "when the evidence demonstrates that the offense was committed at a specific time and place and the defendant has presented a defense of alibi or lack of opportunity . . . ."  (Bench Notes to CALCRIM No. 207 (2014) p. 37.)

Here, the prosecution's evidence did not point to a specific date for any of the 500 times Scott molested Doe, and Scott did not offer an alibi defense.  The prosecutor argued the abuse occurred over a multi-year period, and that Doe did not remember specific dates of the abuse because there were "too many times to remember."  As a result, the court properly instructed the jury pursuant to CALCRIM No. 207.  (See *People v. Wrigley* (1968) 69 Cal.2d 149, 156-160; see also *People v. Richardson* (2008) 43 Cal.4th 959, 1027-1028.)  There was not — as Scott claims — a reasonable likelihood the jury misconstrued CALCRIM No. 207 to convict him of continuous sexual abuse based on conduct occurring after Doe turned 14.  As noted, the instructions required the prosecution to prove Doe "was under the age of 14 years at the time of the acts." (CALCRIM No. 1120.)  No juror would have concluded acts occurring "reasonably close," but after, the dates specified would suffice, particularly where the evidence at trial

5

demonstrated numerous acts of sexual abuse occurred well before Doe turned 14. The court did not error by instructing the jury with CALCRIM No. 207.

Giving the instruction did not somehow interfere with Scott's defense, nor did it deprive him of effective assistance of counsel. As a result, Scott's due process claim fails. (*People v. Osband* (1996) 13 Cal.4th 622, 675 ["[b]ecause there was no state law error, neither was there any predicate for a constitutional violation"].) Having reached this result, we need not address the parties' arguments regarding prejudice.

II.
*The Court Did Not Err by Instructing the Jury with CALCRIM No. 370*

Scott argues the court reduced the prosecution's burden of proof by instructing the jury pursuant to CALCRIM No. 370 that "[t]he People are not required to prove that the defendant had a motive to commit any of the crimes charged." According to Scott, motive is an element of continuous sexual abuse in violation of section 288.5 and instructing the jury pursuant to CALCRIM No. 370 that the prosecution "did not have to prove motive was fundamentally improper." We are not persuaded.

Scott has cited no authority holding motive is an element of continuous sexual abuse. Our high court has suggested otherwise: " 'Motive, intent, and malice . . . are separate and disparate mental states. The words are not synonyms. Their separate definitions were accurate and appropriate.' [Citation.] Motive describes the reason a person chooses to commit a crime. The reason, however, is different from a required mental state such as intent or malice." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 504 (*Hillhouse*).) Here, the jury instructions did not use " 'motive' and 'intent' interchangeably, and therefore there is no reasonable likelihood the jury understood those terms to be synonymous." (*People v. Cash* (2002) 28 Cal.4th 703, 739 (*Cash*).)

Scott concedes several courts have rejected the argument that CALCRIM No. 370 lessens the prosecution's burden of proof. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1094-1095 [discussing equivalent CALJIC No. 2.51 instruction]; *People v. Fuentes* (2009) 171 Cal.App.4th 1133, 1139 (*Fuentes*).) For example, in *Fuentes*, the defendant argued CALCRIM No. 370 conflicted with the pattern instructions for criminal street

6

gang participation (§§ 186.22, subd. (a), (b)(1), 190.2, subd. (a)(22)) and lessened the prosecution's burden of proof. (*Fuentes, supra,* 171 Cal.App.4th at p. 1139.) The *Fuentes* court rejected this argument and concluded "[a]n intent to further criminal gang activity is no more a 'motive' in legal terms than is any other specific intent. We do not call a premeditated murderer's intent to kill a 'motive,' though his action is motivated by a desire to cause the victim's death. Combined, the instructions here told the jury the prosecution must prove that Fuentes intended to further gang activity but need not show what motivated his wish to do so. This was not ambiguous and there is no reason to think the jury could not understand it. Fuentes claims the intent to further criminal gang activity should be deemed a motive, but he cites no authority for this position. There was no error." (*Fuentes,* at p. 1140.)

The *Fuentes* court's rationale applies here. Like other courts, we decline Scott's invitation to conclude *Fuentes* is wrongly decided and we reject his reliance on *People v. Maurer* (1995) 32 Cal.App.4th 1121, a case distinguished in *Fuentes* and by the California Supreme Court. (See *Fuentes, supra,* 171 Cal.App.4th at p. 1140; *Hillhouse, supra*, 27 Cal.4th at p. 504; *Cash, supra,* 28 Cal.4th at pp. 738-739.) We conclude the court did not err by instructing the jury with CALCRIM No. 370. Having reached this result, we need not address the parties' arguments regarding prejudice.

DISPOSITION

The judgment is affirmed.

7

_____

Jones, P.J.


We concur:


_____

Simons, J.


_____

Bruiniers, J.


A139229